1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

OLSON KUNDIG, INC.,

CASE NO. C22-0825JLR

11

Plaintiff,

ORDER

v.

12

13

12TH AVENUE IRON, INC.,

14

Defendant.

15

## I.    INTRODUCTION

16

Plaintiff Olson Kundig, Inc. ("Olson Kundig") moves to dismiss Defendant 12th

17

Avenue Iron, Inc.'s ("12th Avenue Iron") unjust enrichment, Washington Uniform Trade

18

Secrets Act ("WUTSA"), and Washington Consumer Protection Act ("WCPA")

19

counterclaims.  (Mot. (Dkt. # 19); Reply (Dkt. # 25).[1])  12th Avenue Iron opposes the

20

motion.  (Resp. (Dkt. # 24).)  The court has considered the parties' submissions, the

21

22

---

[1] When citing to the parties' pleadings, the court uses the pleadings' internal pagination
unless otherwise stated.

ORDER - 1

1    balance of the record, and the applicable law.  Being fully advised,[2] the court GRANTS

2    IN PART and DENIES IN PART Olson Kundig's motion to dismiss.

3                            **II.   BACKGROUND**

4            This dispute stems from the parties' business dealings with respect to the "Tom

5    Kundig Collection"—a hardware and home furnishings line that is, according to 12th

6    Avenue Iron, "owned and designed by" 12th Avenue Iron and Olson Kundig.  (*See*

7    *generally* Answer (Dkt. # 12) ¶ C19.[3])

8    **A.    The Parties**

9            Stephen Marks is a founder and the current owner of 12th Avenue Iron.  (*See id.*

10   ¶ C7.)  12th Avenue Iron "designs, builds, and installs custom architectural metalwork,

11   sculpture, and furniture for commercial, residential, and public environments."  (*Id.*

12   ¶ C6.)

13           Tom Kundig is an architect and an owner and design principal of Olson Kundig,

14   an architectural firm.  (*See* Compl. (Dkt. # 1) ¶¶ 10-11; Answer ¶ C8.)  According to

15   Olson Kundig, the firm "has been a worldwide leader in architectural design for several

16   decades"; its work "encompasses museums, commercial and mixed-use design, exhibit

17   design, interior design, places of worship, and residences."  (Compl. ¶ 10.)

18

19           [2] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1), and the court has
20   determined that oral argument would not be helpful to its disposition of the motions, *see* Local
     Rules W.D. Wash. LCR 7(b)(4).

21           [3] Because 12th Avenue Iron separately numbers the paragraphs in the counterclaim
     section of its answer (*see* Answer at 13-23), the court uses "A" to refer to the paragraphs in the
22   answer section and "C" to refer to the paragraphs in the counterclaim section.

**B.     The Tom Kundig Collection**

In or about December 2009, Mr. Kundig and Mr. Marks "started discussions concerning the formation of a business relationship between" Olson Kundig and 12th Avenue Iron.  (Answer ¶ C9.)  During the parties' discussions, Mr. Marks allegedly proposed that the two companies work together to create a product line for hardware and home furnishings.  (*See id.* ¶¶ C10-12.)

The precise nature of the parties' relationship as well as the existence, validity, and enforceability of any contract or agreement between them remain subject to dispute. According to 12th Avenue Iron, Mr. Marks and Mr. Kundig "orally agreed that this line of products developed together, although called the 'Tom Kundig Collection[,]' would be a partnership and joint venture."[4]  (*Id.* ¶ C13.)  Although Olson Kundig circulated a written agreement regarding the Tom Kundig Collection at one point, 12th Avenue Iron alleges that the agreement was "never negotiated, discussed, or signed by anyone." (*Id.* ¶¶ C17-18.)

Leading up to the Tom Kundig Collection's launch in 2012, the parties worked together to create the Tom Kundig Collection products.  (*See id.* ¶¶ C15-16.)  According to 12th Avenue Iron, Mr. Kundig designed and sketched the products while Mr. Marks "researched all the suppliers, vendors, and made rounds of prototypes to create perfect, high-end products for the Tom Kundig Collection."  (*Id.* ¶ C16; *see also id.* ¶ C15 (claiming that Mr. Marks "invested intensive time and energy developing the sources,

---

[4] Olson Kundig disputes 12th Avenue Iron's characterization of the relationship as a partnership.  (*See, e.g.*, Compl. ¶¶ 18-26, 36.)

1   products and processes for the [Tom Kundig Collection] product line"); *id.* ¶ C21

2   (alleging that 12th Avenue Iron "fully participated in the design of all the products with

3   Olson Kundig").)

4        12th Avenue Iron claims that since the Collection's launch in 2012, the parties

5   have "had a partnership in designing and manufacturing the products launched under the

6   Tom Kundig Collection."[5]  (*Id.* ¶ C20; *see also id.* ¶¶ C19, C24-25 (explaining that

7   customers could purchase the Tom Kundig Collection products through 12th Avenue

8   Iron's official website, and 12th Avenue Iron was responsible "for all sales transactions

9   as well as delivery and shipping of the products."); *id.* ¶ C23 (alleging that Olson Kundig

10   "relied on 12th Ave[nue] Iron's participation in the design of each of the products in the

11   Tom Kundig Collection as it was necessary to determine the feasibility in the fabrication

12   and development of shop drawings to enable manufacturing of said products"); *id.* ¶ C27

13   ("For over the past ten (10) years, the parties collaborated to design and develop the

14   various products sold on 12th Ave[nue] Iron's website.").)  In light of the significant

15   amount of time that 12th Avenue Iron has spent developing the Tom Kundig Collection,

16   it alleges that it holds "ownership interests in the supplier and vendor information,

17   customer lists developed through its website, as well as design, fabrication, and

18   manufacturing trade secrets and intellectual property to products launched under the Tom

19   Kundig Collection."  (*Id.* ¶¶ C15, C22, C27.)

20

21        ───────────────────
          [5] The Collection initially consisted of a small number of items including "coat hooks,
22   shelf brackets, door hardware, and drawer pulls," but eventually expanded to a compendium of
     over 125 products.  (Answer ¶¶ C26-27.)

## C.  Termination of the Business Relationship Between Olson Kundig and 12th Avenue Iron and Commencement of this Lawsuit

According to 12th Avenue Iron, "[i]n 2020, due to factors out of 12th Ave[nue] Iron's control, it temporarily fell behind on fulfilling some orders for the Tom Kundig Collection."  (*Id.* ¶ C28.)  Olson Kundig then proposed using another Seattle-based metal fabrication company, Argent Fabrication, LLC ("Argent"), "to assist 12th Ave[nue] Iron in fulfilling its orders."  (*Id.* ¶ C29.)  12th Avenue Iron states that it understood Olson Kundig's proposal as "instructing 12th Ave[nue] Iron to allow Argent to assist 12th Ave[nue] Iron with its orders."  (*Id.* ¶ C31.)  Thus, 12th Avenue Iron "opened its doors and showed everything to Argent – including its supplier and vendor information, customers developed through the website, and of course its design, fabrication, and manufacturing trade secrets and intellectual property developed for the [Tom Kundig Collection]."  (*Id.*; *see also id.* ¶ C34 (claiming that Olson Kundig "pushed for a merger between Argent and 12th Ave[nue] Iron").)

According to 12th Avenue Iron, for several months, Argent sent its crew to fulfill Tom Kundig Collection orders for 12th Avenue Iron, "frequently without properly consulting [Mr. Marks]," and invoiced 12th Avenue Iron over $120,000 for work performed during a three-month period.  (*Id.* ¶ C32.)  12th Avenue Iron and its customers were allegedly dissatisfied with Argent's work product.  (*See id.* ¶ C33 (stating that "Argent's work turned out to be substandard and shoddy" and customers "demanded refunds or refused to pay 12th Ave[nue] Iron until Argent's poor workmanship [was] repaired").)

On April 28, 2022, Olson Kundig notified 12th Avenue Iron that Olson Kundig intended to terminate the parties' relationship and demanded that 12th Avenue Iron "remove the Tom Kundig Collection line from its website, return all shop drawings, other designs/drawings, and any other documents provided by or created by Olson Kundig, and return customer's payments for any unfulfilled orders." (*Id.* ¶ C35.) 12th Avenue Iron alleges that Olson Kundig also interfered with its business, leading to significant losses. (*See id.* ¶ C37.) For instance, according to 12th Avenue Iron, Olson Kundig "sent a mass email to its customers and clients instructing them not only to cease ordering from 12th Ave[nue] Iron, but also to order from Argent instead." (*Id.* ¶ C36.) As a result, 12th Avenue Iron claims that Olson Kundig is "allowing Argent to use 12th Ave[nue] Iron's trade secrets and intellectual property to make products from the Tom Kundig Collection." (*Id.* ¶ 38.)

Because 12th Avenue Iron allegedly continued to manufacture, market, and sell Tom Kundig Collection products after receiving Olson Kundig's termination letter, Olson Kundig commenced this case against 12th Avenue Iron on June 12, 2022. (*See generally* Compl. ¶¶ 48, 51-56.) Olson Kundig brings claims against 12th Avenue Iron for: breach of contract; infringement of the D352, D197, D933 and D422 Design Patents under 35 U.S.C. § 271; infringement of the OLSON KUNDIG trademark under 15 U.S.C. § 1114; infringement of the TOM KUNDIG COLLECTION trademark under Washington common law; violation of the Washington Personality Rights Act ("WPRA"), RCW 63.60.010 *et seq.*; and violation of the WCPA, RCW 19.86.010 *et seq.* (*See id.* at 10-20.) 12th Avenue Iron brings counterclaims against Olson Kundig for: breach of contract;

1   unjust enrichment; violation of the WCPA; and violation of the WUTSA, RCW

2   19.108.010 *et seq.*  (*See generally* Answer at 18-22.)

3                                    **III.   ANALYSIS**

4           Olson Kundig now moves to dismiss 12th Avenue Iron's unjust enrichment,

5   WUTSA, and WCPA counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1)

6   or, alternatively, Rule 12(b)(6).  (*See generally* Mot.)  It argues that the court should

7   dismiss those counterclaims because:  (1) 12th Avenue Iron lacks standing to assert the

8   counterclaims; and (2) even if 12th Avenue Iron does have standing, it has failed to

9   plausibly plead the counterclaims.  (*See generally id.* at 2-10; Reply at 2-5.)  Because

10  12th Avenue Iron has agreed to dismiss its WCPA counterclaim (Resp. at 7), the court

11  will address only 12th Avenue Iron's unjust enrichment and WUTSA counterclaims

12  below.  The court discusses whether 12th Avenue Iron lacks standing before addressing

13  whether 12th Avenue Iron has sufficiently pled its unjust enrichment and WUTSA

14  counterclaims.

15  **A.    Whether 12th Avenue Iron Lacks Standing**

16          The court sets forth the relevant legal standard before considering whether 12th

17  Avenue Iron has standing to pursue its unjust enrichment and WUTSA counterclaims.

18          1. <u>Legal Standard</u>

19          Pursuant to Article III of the U.S. Constitution, federal courts have limited

20  jurisdiction to hear only live "cases" and "controversies."  *Lujan v. Defs. of Wildlife*, 504

21  U.S. 555, 559 (1992); U.S. Const. art. III, § 2.  Accordingly, "Article III standing is a

22  necessary component of subject matter jurisdiction."  *In re Palmdale Hills Prop., LLC,*

654 F.3d 868, 873 (9th Cir. 2011).  To satisfy the case-or-controversy requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  When a plaintiff lacks standing, dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(1) can attack the factual allegations establishing standing or can attack plaintiff's standing facially.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  Because Olson Kundig challenges 12th Avenue Iron's standing solely on the basis of the allegations in the answer, Olson Kundig asserts a facial attack under Rule 12(b)(1).  *Id.*; (*see also* Mot. at 2 (attacking "12th Avenue Iron's standing facially")).

"The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the [non-moving party's] allegations as true and drawing all reasonable inferences in the [non-moving party's] favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).  At the

1    pleading stage, a plaintiff need not satisfy *Iqbal*/*Twombly*'s plausibility standard,[6] but

2    "must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v.*

3    *Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

4    As such, the inquiry does not touch directly on the merits of plaintiff's case. *See Maya*,

5    658 F.3d at 1068 (contrasting a facial Rule 12(b)(1) motion with a Rule 12(b)(6) motion,

6    which "necessarily assesses the merits of plaintiff's case").

7         2.   12th Avenue Iron's Standing

8         Olson Kundig argues that 12th Avenue Iron's unjust enrichment and WUTSA

9    counterclaims must be dismissed because 12th Avenue Iron lacks standing "in a personal

10   and individual way" to pursue such claims. (*See generally* Mot. at 4 (quoting *Spokeo*,

11   578 U.S. at 339).) Olson Kundig does not necessarily allege that 12th Avenue Iron has

12   failed to sufficiently allege the specific elements of Article III standing. (*See generally*

13   Mot. at 2-4; Reply at 2-3.) Rather, Olson Kundig argues that 12th Avenue Iron,

14   according to its own partnership theory, does not own the intellectual property and trade

15   secrets that it uses as the basis for its unjust enrichment and WUTSA counterclaims.

16   (Mot. at 2-3 (stating that because 12th Avenue Iron alleges that the parties jointly owned

17   the Tom Kundig Collection products, the alleged partnership would own the entire Tom

18   Kundig Collection, including the intellectual property and trade secrets related to it).) As

19   such, Olson Kundig contends that any injury associated with Olson Kundig's alleged

20   misappropriation and unauthorized use of such intellectual property and trade secrets

21

22   ───────────────
     [6] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

1    would be an injury suffered by the alleged partnership, not by 12th Avenue Iron itself.

2    (*See id.*)  Because 12th Avenue Iron "fails to assert any injuries distinct from the alleged

3    partnership's injury," "it has no standing to assert claims regarding the alleged theft of

4    those assets."  (*Id.* at 3.)

5            In response, 12th Avenue Iron states that it "is alleging a partnership theory as one

6    of its claims and, in the *alternative*, if there is no partnership, then seeking damages for

7    injuries suffered *separate* from its partnership theory under unjust enrichment and

8    violation of [W]UTSA against [Olson] Kundig."  (Resp. at 3-4 (emphasis in original).)

9    12th Avenue Iron contends that it has standing to pursue those alternatively pled

10   counterclaims based on the theory that it, not the alleged partnership, is the sole owner of

11   the intellectual property and trade secrets that form the basis of its unjust enrichment and

12   WUTSA counterclaims.  (*Id.* ("As a genuine issue of material fact exists regarding what

13   rights the parties have in this dispute, 12th Ave[nue] Iron is entitled to plead unjust

14   enrichment and violation of [the] [W]UTSA in the alternative.").)

15          The court agrees with 12th Avenue Iron, accepting, as it must, 12th Avenue Iron's

16   factual allegations as true and drawing reasonable inferences in its favor.  *See Leite*, 749

17   F.3d at 1121.  12th Avenue Iron's unjust enrichment and WUTSA counterclaims seek

18   damages for injuries that it, as the sole owner of the intellectual property and trade secrets

19   at issue, suffered due to Olson Kundig's alleged misconduct.  While the words "in the

20   alternative" do not appear in 12th Avenue Iron's counterclaims, "there is no requirement

21   that [12th Avenue Iron must] include the magic words 'in the alternative' in making

22

alternative claims."[7]  *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1103 (D. Haw. 2014).  Additionally, even though 12th Avenue Iron, in its unjust enrichment and WUTSA counterclaims, incorporates by reference its preceding factual allegations, including those alleging the existence of a partnership (*see* Answer ¶¶ C49, C68), the court can reasonably infer that 12th Avenue Iron pled its unjust enrichment and WUTSA counterclaims in the alternative to its partnership counterclaim.  Finally, the court agrees with 12th Avenue Iron's contention that it would be premature to dismiss its unjust enrichment and WUTSA counterclaims for lack of standing before the court determines what rights the parties have in this lawsuit—i.e., whether the parties were partners and what the terms of the partnership were, or whether the unsigned written contract and all of its terms governs.  (*See* Resp. at 4.)  Accordingly, at this stage, the court finds that 12th Avenue Iron has adequately alleged that it has standing to pursue its alternatively pled unjust enrichment and WUTSA counterclaims.[8]  As such, the court DENIES Olson

---

[7] Federal Rule of Civil Procedure 8(a)(3) provides that a "pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  Rule 8(d) further provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. . . . A party may [also] state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d); *see also PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("[W]e allow pleadings in the alternative—even if the alternatives are mutually exclusive.").

[8] Additionally, the court reject's Olson Kundig's contention that 12th Avenue Iron cannot plead its unjust enrichment and WUTSA counterclaims in the alternative to its partnership claim because it has "already submitted a sworn declaration repeatedly stating, under oath, that there is a partnership."  (Reply at 2-3 (citing Marks Decl. (Dkt. # 15)).)  Because Olson Kundig has launched a facial attack under Rule 12(b)(1), the court's review is limited to the allegations contained in 12th Avenue Iron's answer.  *See Safe Air*, 373 F.3d at 1039; *Am. Fed'n of Tchrs. v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020), *on reconsideration in part sub nom. Am. Fed'n of Tchrs. v. Cardona*, No. 5:20-CV-00455-EJD, 2021 WL 4461187 (N.D. Cal. Sept. 29,

1    Kundig's motion to dismiss 12th Avenue Iron's unjust enrichment and WUTSA

2    counterclaims for lack of standing.

3    **B.     Whether 12th Avenue Iron States a Claim Upon Which Relief Can Be
         Granted**

4           Having declined to dismiss 12th Avenue Iron's unjust enrichment and WUTSA

5    counterclaims for lack of standing, the court now considers whether those counterclaims

6    must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  The court sets

7    forth the relevant legal standard before analyzing the sufficiency of 12th Avenue Iron's

8    unjust enrichment and WUTSA counterclaims.

9           1.   Legal Standard

10          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for

11   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To

12   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

13   as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

14   (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the pleaded

15   factual content allows the court to draw the reasonable inference that the defendant is

16   liable for the misconduct alleged."  *Id.*  While "detailed factual allegations" are not

17   required, a [pleading] must include "more than an unadorned, the-defendant-unlawfully-

18   harmed-me accusation."  *Id.*  The same pleading standard, and standard of review, applies

19   to counterclaims.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations

20

21   _____

22   2021).  Accordingly, the court will not consider Mr. Marks's declaration, which was submitted in
     support of 12th Avenue Iron's preliminary injunction opposition, in ruling on the instant motion.

1   in a . . . counterclaim . . . must contain sufficient allegations of underlying facts to give

2   fair notice and to enable the opposing party to defend itself effectively."); *see also*

3   *Lemman v. Foley*, No. C20-0591JCC, 2020 WL 7181055, at *1 (W.D. Wash. Dec. 7,

4   2020) (noting that a motion to dismiss a counterclaim is evaluated under the same

5   standards applicable to a motion to dismiss a complaint).

6          When considering a Rule 12(b)(6) motion, the court may consider the pleading,

7   documents attached to the pleading, documents incorporated therein, or matters of

8   judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003);

9   *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The court must

10  accept the non-moving party's well-pleaded factual allegations as true and draw all

11  reasonable inferences in favor of the non-moving party. *See Hines v. Youseff*, 914 F.3d

12  1218, 1227 (9th Cir. 2019); *Daniels-Hall*, 629 F.3d at 998. However, the court is not

13  required to accept as true "allegations that are merely conclusory, unwarranted

14  deductions of fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998; *Chavez v.*

15  *United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (stating that the court is not required

16  to accept as true legal conclusions or "formulaic recitation[s] of the elements of a cause

17  of action").

18          2.  Unjust Enrichment Counterclaim

19          Unjust enrichment allows a plaintiff to recover "for the value of [a] benefit

20  retained [by the defendant] absent any contractual relationship because notions of

21  fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) ("In

22  such situations a quasi contract is said to exist between the parties."). To state a claim for

1   unjust enrichment, a plaintiff must establish that: "(1) the defendant receives a benefit,

2   (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it

3   unjust for the defendant to retain the benefit without payment." *Id.* The remedy of unjust

4   enrichment is not available if there is "a valid contract governs the rights and obligations

5   of the parties." *Firey v. Orozco*, No. 33232–2–III, 2015 WL 5893664, at *8 (Wash. Ct.

6   App. Oct. 1, 2015); *see also Ehreth v. Capital One Servs., Inc.*, No. C08-0258RSL, 2008

7   WL 3891270, at *3 (W.D. Wash. Aug. 19, 2008) (dismissing unjust enrichment claim

8   based on defendant's charging and accepting of late fees where the parties' express

9   contract governed "the circumstances in which defendant could charge late fees and the

10  amount of those fees" and plaintiff did not argue that the contract was unenforceable).

11  However, the "mere existence of a contract does not automatically invalidate an unjust

12  enrichment claim," as the contract may be unenforceable or may not explicitly cover the

13  subject matter that forms the basis of the unjust enrichment claim. *See Vernon v. Qwest*

14  *Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1266-67 (W.D. Wash. 2009); *see also Pierce*

15  *Cnty. v. State*, 185 P.3d 594, 619 (Wash. 2008), *as amended on denial of reconsideration*

16  (July 15, 2008) ("Because the contracts did not explicitly cover the County's

17  responsibility for long-term care, they do not bar the County's [unjust enrichment] claim

18  based on quasi-contract principles.").

19          In its unjust enrichment counterclaim, 12th Avenue Iron alleges, in relevant part,

20  that: (1) it owns "the vendor and supplier information and customer lists developed

21  through its website as well as design, fabrication, and manufacturing trade secrets and

22  intellectual property for products on the Tom Kundig Collection" (collectively, the

1  "Information"); (2) Olson Kundig received "a benefit by taking and using 12th Ave[nue]

2  Iron]'s Information, and [continuing to use such information] to sell and fulfill orders

3  from the Tom Kundig Collection at 12th Ave[nue] Iron's expense, without 12th Ave[nue]

4  Iron's consent, benefit, or proper compensation"; and (3) Olson Kundig will be "unjustly

5  enriched if it is allowed to enjoy the benefits derived from unfairly obtaining 12th

6  Ave[nue Iron]'s Information necessary to sell, manufacture, and fulfill its orders from the

7  Tom Kundig Collection without payment to 12th Ave[nue] Iron."  (Answer ¶¶ C50-52.)

8      Olson Kundig argues that "[w]hen there is an alleged valid and enforceable oral

9  contract between 12th Avenue Iron and Olson Kundig, placing duties and obligations on

10  the parties concerning the same subject matter for which 12th Avenue Iron claims Olson

11  Kundig was unjustly enriched, 12th Avenue Iron cannot pursue a claim for unjust

12  enrichment."  (Mot. at 5 (stating that 12th Avenue Iron's allegations regarding the

13  existence of a partnership agreement contradict its unjust enrichment allegations (citing

14  Answer ¶¶ C42-43, C50-52)).)  Olson Kundig's argument fails for at least two reasons.

15      First, the court can reasonably infer that 12th Avenue Iron's unjust enrichment

16  counterclaim is pled in the alternative to its partnership counterclaim—i.e., it is based on

17  the theory that there is no valid partnership agreement governing the parties' ownership

18  and use of the Information at issue.[9]  *See supra* Section III.A.2; (*see also* Resp. at 6-7.)

19  Thus, although 12th Avenue Iron alleges, in relation to its breach of contract claim, that

20

21      [9] As noted above, the federal rules of civil procedure permit 12th Avenue Iron to plead its
   unjust enrichment counterclaim in the alternative to its partnership counterclaim, regardless of

22  any inconsistencies.  *See* Fed. R. Civ. P. 8(a)(3), (d).

the parties entered into a valid oral agreement to form a partnership regarding the Tom

Kundig Collection (*see* Answer ¶¶ C42-43), such "contradictor[y]" allegations (*see* Mot.

at 5) do not require the dismissal of 12th Avenue Iron's alternatively pled unjust

enrichment counterclaim at this stage.

Second, Olson Kundig's argument also fails because the court has not yet held that

a valid contract exists between the parties regarding the Tom Kundig Collection, nor has

it held that a valid contract explicitly outlines the parties' rights and responsibilities with

respect to the Information at issue in 12th Avenue Iron's unjust enrichment counterclaim.

*See Vernon*, 643 F. Supp. 2d at 1266-67 (declining to dismiss an unjust enrichment claim

in light of the mere existence of a contract between the parties because the court had yet

to hold that the contract was valid and addressed the subject matter at issue); (*see*

*generally* Dkt.).  The court agrees with 12th Avenue Iron that both the existence and

content of any contract between the parties with respect to the Tom Kundig Collection

remains subject to dispute.  (*See* Resp. at 6 (contending that genuine disputes of material

fact exist as to whether there is a valid contract between the parties regarding the Tom

Kundig Collection and, if so, what rights the contract confers on each party regarding the

Collection).)  In its reply, Olson Kundig argues that dismissal is warranted because

"[n]either party is arguing that a contract does not exist or does not apply, there is only a

dispute about which contract will be enforced"—"an alleged oral partnership agreement

or the written, but unsigned, license agreement exchanged between the parties."  (Reply

at 3-4.)  However, this argument alone does not establish that either contract (1) is

enforceable, or (2) addresses the subject matter at issue in 12th Avenue Iron's unjust

1    enrichment claim.  *See Vernon*, 643 F. Supp. 2d at 1266-67.  Thus, the parties' arguments

2    regarding the existence of a contract do not compel the court to dismiss 12th Avenue

3    Iron's unjust enrichment counterclaim at this stage.

4         In sum, considering the entirety of 12th Avenue Iron's factual allegations and

5    drawing all reasonable inferences in its favor, *Hines*, 914 F.3d at 1227, the court finds

6    that 12th Avenue Iron has sufficiently pled its unjust enrichment counterclaim.  As such,

7    the court DENIES Olson Kundig's motion to dismiss 12th Avenue Iron's unjust

8    enrichment counterclaim for failure to state a claim.

9         3.  <u>WUTSA Counterclaim</u>

10        "A claim under the WUTSA requires a plaintiff to plead (1) the existence of a

11   protectable trade secret, and (2) facts constituting misappropriation."  *NW Monitoring*

12   *LLC v. Hollander*, 534 F. Supp. 3d 1329, 1336 (W.D. Wash. 2021).  Olson Kundig

13   argues that the court must dismiss 12th Avenue Iron's WUTSA counterclaim because

14   (1) 12th Avenue Iron fails to describe its alleged trade secrets with sufficient specificity;

15   (2) 12th Avenue Iron does not sufficiently plead that it made reasonable efforts to

16   maintain the secrecy of its alleged trade secrets; and (3) 12th Avenue Iron does not

17   sufficiently identify how its alleged trade secrets were misappropriated.  (*See* Mot. at 6-9;

18   Reply at 4-5.)  The court addresses each argument in turn.

19             a.  *Identification of the Alleged Trade Secrets*

20        "A plaintiff seeking relief for misappropriation of trade secrets must identify the

21   trade secrets and carry the burden of showing that they exist."  *See MAI Sys. Corp. v.*

22   *//*

*Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).  The WUTSA defines a trade

secret as:

> [I]nformation, including a formula, pattern, compilation, program, device,
> method, technique, or process that:
>
>> (a) derives independent economic value, actual or potential, from not
>> being generally known to, and not being readily ascertainable by
>> proper means by other persons who can obtain economic value from
>> its disclosure or use; and
>
>> (b) is the subject of efforts that are reasonable under the circumstances
>> to maintain its secrecy.

RCW 19.108.010(4).  While a plaintiff need not disclose its alleged trade secrets in such

detail that it would result in public disclosure of those trade secrets, they must sufficiently

identify those alleged trade secrets such that the other party is on notice of what it is

alleged to have misappropriated.  *See Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281

F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017); *Bombardier Inc. v. Mitsubishi Aircraft

Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) ("Although the complaint need

not 'spell out the details of the trade secret,' a plaintiff seeking relief for trade secret

misappropriation must identify the trade secret 'with sufficient particularity . . . to permit

the defendant to ascertain at least the boundaries within which the secret lies.'" (quoting

*SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300 JVS (ANx), 2012 WL

12893935, at *2 (C.D. Cal. Oct. 29, 2012))).

  12th Avenue Iron characterizes its trade secrets as "information or trade secrets in

designing, fabricating, and manufacturing all products that brought the Tom Kundig

Collection to market."  (Answer ¶ C70; *see also id.* ¶ C72.)  Olson Kundig argues that

1   12th Avenue Iron's WUTSA counterclaim must be dismissed because "12th Avenue

2   Iron's description of the alleged trade secrets is so vague and generalized that it does not

3   clarify what specific components of the design, fabrication, and manufacture of the Tom

4   Kundig Collection line products were protected by trade secrets." (Mot. at 7.)  12th

5   Avenue Iron claims that "it would be impossible and impractical to detail specific

6   components for the design, fabrication, and manufacturing of over 125 household metal

7   hardware products in the [Tom Kundig] Collection." (Resp. at 8 (citing no case law to

8   support its position).)  The court, however, agrees with Olson Kundig's contention that

9   "[w]hile providing such detail might be difficult, that does not absolve [12th Avenue

10   Iron] of its duty to provide more than a 'vague description' of its trade secrets." (Reply at

11   4.)  Without a more specific description of its alleged trade secrets, 12th Avenue Iron

12   places Olson Kundig "in an untenable position moving forward of not knowing what

13   information is actually at issue in this case" (Reply at 4) and leaves the court unable to

14   determine "whether [the] particular type or format of information is protected," *NW*

15   *Monitoring*, 534 F. Supp. 3d at 1336-37 (quoting *Multifab, Inc. v. Zweiger*, No.

16   C19-6164BHS, 2020 WL 2614736, at *3 (W.D. Wash. May 22, 2020)) (noting that the

17   court must answer such a question at the motion to dismiss stage).

18        Accordingly, while 12th Avenue Iron "points to general categories in which it

19   alleges trade secret misappropriation," it fails to sufficiently identify its alleged trade

20   secrets because it does not "clarify what specific components" of the Tom Kundig

21   Collection products' design, manufacture, and sale are protected by trade secrets. *See,*

22   *e.g.*, *Cascade Designs Inc. v. Windcatcher Tech. LLC*, No. C15-1310TSZ, 2016 WL

1    374564, at *2 (W.D. Wash. Feb. 1, 2016) ("Because defendant fails to plead the details

2    about its AirPad design that make it a trade secret, defendant does not meet the pleading

3    requirements for this claim.").  Therefore, 12th Avenue Iron's WUTSA counterclaim

4    cannot survive because 12th Avenue Iron fails to adequately establish the first element of

5    the claim.  *See Baden Sports, Inc. v. Wilson Sporting Goods Co.*, C11-0603MJP, 2011

6    WL 3158607, at *2 (W.D. Wash. July 26, 2011) (pleadings are not adequate to survive a

7    12(b)(6) motion when a party does not specify in its complaint which components, or

8    combination of components, of a device are protected trade secrets).

9                    *b.  Efforts to Maintain the Secrecy of the Alleged Trade Secrets*

10          In order to state a claim for trade secret misappropriation, a plaintiff must also

11   establish that it made reasonable efforts to maintain the secrecy of its alleged trade

12   secrets.  *See* RCW 19.108.010(4).  "[R]easonable efforts to maintain secrecy have been

13   held to include advising employees of the existence of a trade secret, limiting access to a

14   trade secret on need-to-know basis, and controlling plant access."  *Machen, Inc. v.*

15   *Aircraft Design, Inc.*, 828 P.2d 73, 76-79 (Wash. Ct. App. 1992), *overruled on other*

16   *grounds by Waterjet Tech., Inc. v. Flow Int'l Corp.*, 996 P.2d 598 (Wash. 2000).  "On the

17   other hand, public disclosure of information . . . can preclude protection."  *Id.*

18          Olson Kundig argues that even if 12th Avenue Iron has sufficiently identified its

19   alleged trade secrets, it fails to establish that it made reasonable efforts to maintain the

20   secrecy of its alleged trade secrets because "12th Avenue Iron disclosed all of its

21   allegedly owned trade secrets to a third party without any attempts to ensure

22   confidentiality."  (Mot. at 7.)  The court agrees.  12th Avenue Iron admits that it "opened

its doors and showed everything to Argent – including its supplier and vendor

information, customers developed through the website, and of course its design,

fabrication, and manufacturing trade secrets and intellectual property developed for the"

Tom Kundig Collection.  (Answer ¶ C31.)  12th Avenue Iron does not, however, plead

any facts to suggest that it advised Argent's employees of the existence of its trade

secrets, limited disclosure of its trade secrets to Argent's employees on any need-to-know

basis, or took any other steps to ensure that its alleged trade secrets would be protected.

(*See generally id.*[10]); *see, e.g.*, *Machen*, 828 P.2d at 78-79 (dismissing trade secret claim

where plaintiff shared its alleged trade secrets with a third party at a trade show but did

not present evidence indicating that plaintiff took steps to "see that the information would

be protected").  Accordingly, the court agrees with Olson Kundig that 12th Avenue Iron

"fails to meet the 'secrecy' element because, not only did it fail to plead any facts to

support efforts to protect the alleged trade secrets, it actually pled facts showing it

disclosed its trade secrets to a third party."  (*See* Mot. at 8.)  In the absence of factual

---

[10] While 12th Avenue Iron cites to the statements in Mr. Marks's declaration, which was filed in support of 12th Avenue Iron's preliminary injunction opposition, to establish its efforts to maintain the secrecy of its alleged trade secrets, the court declines to consider such statements in ruling on Olson Kundig's motion to dismiss.  (*See* Resp. at 9-10 (citing Marks Decl. ¶ 40).) The court declines to find that the contents of Mr. Marks's declaration are incorporated by reference in 12th Avenue Iron's counterclaims and thus properly considered at the motion to dismiss stage merely because one of the paragraphs in 12th Avenue Iron's counterclaims state that Olson Kundig filed a motion for a preliminary injunction.  (*See id.* at 9 (citing Answer ¶ C40)); *Ritchie*, 342 F.3d at 908 (describing the documents that a court can consider in ruling on a Rule 12(b)(6) motion to dismiss).  Moreover, even if the court were to consider Mr. Marks's declaration, neither Mr. Marks's declaration nor the counterclaim paragraphs cited by 12th Avenue Iron (*see* Resp. at 10) plausibly establish that 12th Avenue Iron took steps to maintain the secrecy of its alleged trade secrets.

1    allegations establishing that it undertook efforts to protect its trade secrets, 12th Avenue

2    Iron's WUTSA counterclaim cannot survive.

3            c.   *Misappropriation of the Alleged Trade Secrets*

4            A plaintiff asserting a WUTSA claim "must establish that its trade secrets were

5    misappropriated." *See Bombardier*, 383 F. Supp. 3d at 1178; *see also Drut Techs., Inc. v.*

6    *Microsoft Corp.*, No. C21-1653BJR, 2022 WL 2156962, at *6 (W.D. Wash. June 15,

7    2022).  The WUTSA defines misappropriation, in relevant part, as follows:

8            (a) acquisition of a trade secret of another by a person who knows or has
              reason to know that the trade secret was acquired by improper means; or

9

10           (b) disclosure or use of a trade secret of another without express or implied
              consent by a person who:

11                   (i) used improper means to acquire knowledge of the trade secret;

12                   (ii) at the time of disclosure or use, knew or had reason to know that
                     the knowledge of the trade secret was—

13

14                           (A) derived from or through a person who had utilized
                             improper means to acquire it;

15                           (B) acquired under circumstances giving rise to a duty to
                             maintain its secrecy or limit its use; or

16

17                           (C) derived from or through a person who owed a duty to the
                             person seeking relief to maintain its secrecy or limit its use. . . .

18   RCW 19.108.010(2).  "Improper means" includes "theft, bribery, misrepresentation,

19   breach or inducement of a breach of a duty to maintain secrecy, or espionage through

20   electronic or other means."  RCW 19.108.010(1).

21           Even if 12th Avenue Iron had sufficiently identified its alleged trade secrets and

22   established its efforts to maintain their secrecy, Olson Kundig argues that its WUTSA

counterclaim is deficient with respect to its misappropriation allegations.  (*See* Mot. at

8-9.)  The court agrees.  With respect to misappropriation, 12th Avenue Iron alleges that

"[Olson] Kundig and/or Argent misappropriated 12th Ave[nue] Iron's trade secrets to

continue to sell and fulfill Tom Kundig Collection orders."  (Answer ¶ C73.)  Such an

allegation, however, is insufficient to establish how 12th Avenue Iron's alleged trade

secrets were misappropriated.  To begin, it is unclear whether 12th Avenue Iron is

claiming that Olson Kundig itself misappropriated 12th Avenue Iron's alleged trade

secrets or that non-party Argent misappropriated its trade secrets and that Argent's

conduct is somehow traceable to Olson Kundig.[11]  Assuming that 12th Avenue Iron is

claiming that Olson Kundig itself misappropriated 12th Avenue Iron's alleged trade

secrets, 12th Avenue Iron's pleading fails to include allegations regarding how Olson

Kundig misappropriated such trade secrets—i.e., improper acquisition or improper

disclosure or use.  (*See generally* Answer); RCW 19.108.010(2); *see, e.g.*, *Mainz Brady*

*Grp., Inc. v. Shown*, No. C17-0670MJP, 2017 WL 4538968, at *1 (W.D. Wash. Oct. 11,

2017) ("It is insufficient that Plaintiff simply alleges that Defendant misappropriated

trade secrets—that term is a legal conclusion and cannot stand alone without supporting

factual allegations.").  Accordingly, 12th Avenue Iron fails to establish the

misappropriation element of its WUTSA counterclaim because it does not adequately

allege who misappropriated its trade secrets or how such misappropriation occurred.

---

[11] (*See also* Mot. at 9 n.1 (stating that "Argent and Olson Kundig are separate parties and there is no allegation, because it would be entirely factually inaccurate and without any Rule 11 support, to claim that Argent is Olson Kundig's agent").)

1     In sum, the court GRANTS Olson Kundig's Rule 12(b)(6) motion to dismiss 12th

2    Avenue Iron's WUTSA counterclaim because 12th Avenue Iron has failed to adequately

3    (1) describe its alleged trade secrets; (2) identify its efforts to maintain the secrecy of its

4    alleged trade secrets; and (3) establish how its alleged trade secrets were misappropriated.

5    **C.      Leave to Amend**

6     When dismissing a claim for failure to adequately state a claim, "[d]ismissal with

7    prejudice and without leave to amend is not appropriate unless it is clear . . . that the

8    [claim] could not be saved by amendment." *Harris v. Cnty. of Orange*, 682 F.3d 1126,

9    1131 (9th Cir. 2012) (quoting *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048,

10   1052 (9th Cir. 2003)); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658

11   (9th Cir. 1992) ("A district court does not err in denying leave to amend where the

12   amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

13   Cir. 1990))).

14    Although 12th Avenue Iron has failed to plausibly plead its WUTSA

15   counterclaim, *see supra* Section III.B.3, at present, the court cannot conclude that "it is

16   absolutely clear that the deficiencies of the complaint could not be cured by amendment,"

17   *Platt*, 522 F.3d at 1060.  Thus, 12th Avenue Iron may amend its WUTSA counterclaim.

18   12th Avenue Iron shall amend its WUTSA counterclaim, if at all, by October 11, 2022.

19   The court warns 12th Avenue Iron that failure to timely file an amended counterclaim

20   that remedies the aforementioned deficiencies will result in the dismissal of its WUTSA

21   counterclaim with prejudice.

22   *//*

1

## IV.    CONCLUSION

2        For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART

3    Olson Kundig's motion to dismiss 12th Avenue Iron's unjust enrichment, WUTSA, and

4    WCPA counterclaims (Dkt. # 19).  Specifically, the court (1) DISMISSES 12th Avenue

5    Iron's WCPA counterclaim without prejudice and without leave to amend pursuant to

6    12th Avenue Iron's stipulation (Resp. at 7) and (2) DISMISSES 12th Avenue Iron's

7    WUTSA counterclaim without prejudice and with leave to amend.  12th Avenue Iron

8    shall amend its WUTSA counterclaim, if at all, by October 11, 2022.  The court warns

9    12th Avenue Iron that failure to timely file an amended counterclaim that remedies the

10   aforementioned deficiencies will result in the dismissal of its WUTSA counterclaim with

11   prejudice.

12        Dated this 28th day of September, 2022.

13

14

15   JAMES L. ROBART
     United States District Judge

16

17

18

19

20

21

22