UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLSON KUNDIG, INC.,

                    Plaintiff,

        v.

12TH AVENUE IRON, INC.,

                    Defendant.

CASE NO. C22-0825JLR

ORDER

## I.   INTRODUCTION

Before the court is Plaintiff Olson Kundig, Inc.'s ("Olson Kundig") motion for entry of default judgment against Defendant 12th Avenue Iron, Inc. ("12th Avenue Iron"). (Mot. (Dkt. # 52); *see also* Prop. Order (Dkt. # 58); Supp. Mem. (Dkt. # 56).) 12th Avenue Iron has not filed a response to the motion. (*See generally* Dkt.) The court has reviewed the motion, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS in part and DENIES in part Olson Kundig's motion for default judgment.

## II.   BACKGROUND[1]

Tom Kundig is a distinguished architect and an owner and design principal of Olson Kundig, an architectural firm.  (*See* Compl. (Dkt. # 1) ¶¶ 10-11.)  Olson Kundig "has been a worldwide leader in architectural design for several decades."  (*Id.* ¶ 10.)  12th Avenue Iron "specializes in manufacturing metal products that include steel, stainless steel, bronze, copper and aluminum."  (*Id.* ¶ 5.)

Olson Kundig and 12th Avenue Iron entered into a business relationship with respect to the "Tom Kundig Collection"—a hardware and home furnishings line designed by Mr. Kundig and manufactured and sold by 12th Avenue Iron—in 2010.  (*See generally id.* ¶¶ 1, 18-28, 39-43, 46-51.)  Pursuant to a written Product Development, Manufacturing and Marketing Agreement (the "Agreement") between Olson Kundig and 12th Avenue Iron, Olson Kundig was "solely responsible" for designing the Tom Kundig Collection products and "own[ed] all intellectual property rights in and to the" Tom Kundig Collection.[2]  (*Id.*, Ex. 1 ("Agreement") ¶¶ 1.1, 2.1.)  As the intellectual property owner, Olson Kundig granted 12th Avenue Iron "a limited, non-exclusive worldwide, royalty bearing, non-transferrable, non-sublicensable license to manufacture, market and sell the [Tom Kundig Collection products] in accordance with the terms hereof during the

---

[1] The court detailed the factual background of this case in its September 12, 2022 order and does not repeat that background here.  (*See* 9/12/22 Order (Dkt. # 26) at 2-11.)  Instead, the court discusses only the factual and procedural background relevant to the instant motion.

[2] The intellectual property at issue in the instant motion includes:  (1) the D197, D352, D422, and D933 Design Patents; (2) the OLSON KUNDIG trademark; and (3) the TOM KUNDIG COLLECTION trademark.  (*See generally* Compl. at 8-17; 19-21.)

term of this Agreement." (Agreement ¶ 2.3.)  12th Avenue Iron was responsible for

manufacturing, marketing, and selling the Tom Kundig Collection products and had an

obligation to pay Olson Kundig "a royalty of seven percent (7%) of the gross amount

received from the sale of" such products.  (*Id.* ¶¶ 1.2-1.4.)

According to Olson Kundig, the parties performed their obligations in accordance

with the terms of the Agreement for many years, despite not having signed the

Agreement.  (*See, e.g.*, Compl. ¶¶ 26, 36-39; Parwani Decl. (Dkt. # 7) ¶¶ 20-21

(including a chart showing that 12th Avenue Iron paid Olson Kundig royalties for gross

sales of products in the Tom Kundig Collection every year from 2012 until the third

quarter of 2020).)  However, starting in the fourth quarter of 2020, 12th Avenue Iron

stopped paying Olson Kundig any royalties for the sales of Tom Kundig Collection

products.  (*See* Parwani Decl. ¶ 21; Compl. ¶¶ 37, 41; (noting that 12th Avenue Iron

similarly failed to pay any royalties in 2021 and 2022).)  Additionally, Olson Kundig

"learned from its own clients that, despite accepting money for orders of products in the

Tom Kundig Collection, 12th Avenue Iron stopped timely fulfilling those orders in 2020,

around the same time 12th Avenue Iron stopped paying royalties to Olson Kundig."

(Parwani Decl. ¶ 22; *id.* ¶ 37 (stating that customers complained to Olson Kundig about

12th Avenue Iron's services and failure to timely produce orders); Compl. ¶ 40.)

On April 28, 2022, Olson Kundig notified 12th Avenue Iron that it had materially

breached the Agreement by failing to timely pay royalties and fulfill orders and that

Olson Kundig intended to terminate the Agreement in accordance with Paragraphs 3.2

and 3.3 of the Agreement.  (Compl. ¶¶ 42-47.)  According to Olson Kundig, 12th Avenue

1  Iron failed to take any action to remedy the alleged breaches.  (*Id.* ¶ 48.)  Thus, the

2  Agreement was terminated no later than May 28, 2022, whether through the Agreement's

3  no-fault termination clause or through the termination for breach clause.  (*See id.*

4  ¶¶ 47-49; Agreement ¶¶ 3.2-3.3.)  12th Avenue Iron did not, however, cease its activities

5  related to the manufacture, marketing, and sale of Tom Kundig Collection products.  (*See*

6  Compl. ¶¶ 51-56 (alleging that 12th Avenue Iron continues to use Olson Kundig's

7  intellectual property without a license); *see also* 9/12/22 Order at 11, 25, 33-36

8  (discussing evidence of the same).)

9        As a result, Olson Kundig commenced this case against 12th Avenue Iron on June

10  12, 2022.  (*See generally* Compl.)  Olson Kundig brings claims against 12th Avenue Iron

11  for:  breach of contract; infringement of the D352, D197, D933 and D422 Design Patents

12  (the "Design Patents") under 35 U.S.C. § 271; infringement of the OLSON KUNDIG

13  trademark under 15 U.S.C. § 1114; infringement of the TOM KUNDIG COLLECTION

14  trademark[3] under Washington common law; violation of the Washington Personality

15  Rights Act ("WPRA"), RCW 63.60.010 *et seq.*; and violation of the Washington

16  Consumer Protection Act ("WCPA"), RCW 19.86.010 *et seq*.  (*See* Compl. at 10-20.)

17        Two weeks later after it commenced this case, Olson Kundig filed a motion for a

18  preliminary injunction.  (*See* PI Mot. (Dkt. # 6).)  12th Avenue Iron subsequently

19  appeared, answered the complaint, asserted four counterclaims against Olson Kundig,

20  and opposed the motion for a preliminary injunction.  (*See* Ans. (Dkt. # 12); PI Resp.

21

22  _____

[3] The court refers to the OLSON KUNDIG and TOM KUNDIG COLLECTION trademarks as the "Marks."

ORDER - 4

(Dkt. # 14).)  The court preliminarily enjoined 12th Avenue Iron from continued breach of post-termination obligations under the Agreement and continued infringement of Olson Kundig's Marks and Design Patents.  (*See* 9/12/22 Order 12, 41; PI (Dkt. # 30) at 2 (directing 12th Avenue Iron to, among other things, "cease any and all activities related to the manufacture or advertisement of Tom Kundig Collection line products" and "cease accepting any and all orders of the Tom Kundig Collection line products").)

Olson Kundig also moved to dismiss 12th Avenue Iron's unjust enrichment, Washington Uniform Trade Secrets Act ("WUTSA"), and WCPA counterclaims.  (MTD (Dkt. # 19); 2d MTD (Dkt. # 36); *see* Ans.; Am. Ans. (Dkt. # 34).)  The court dismissed 12th Avenue Iron's counterclaims in a series of orders.  (*See* 9/28/22 Order (Dkt. # 31) at 25; 11/16/22 Order (Dkt. # 40) at 16.)

On February 1, 2023, Holmquist & Gardiner, PLLC ("H&G"), filed a motion to withdraw as 12th Avenue Iron's counsel of record, stating that they had been unable to contact 12th Avenue Iron since December 14, 2022.  (MTW (Dkt. # 41) at 2-3.)  Although Olson Kundig did not oppose the motion to withdraw, it filed a motion to compel 12th Avenue Iron to fully respond to its October 17, 2022 discovery requests.  (MTC (Dkt. # 44) at 3-4.)  In its February 21, 2023 order, the court granted the motion to withdraw and denied the motion to compel without prejudice.  (2/21/23 Order (Dkt. # 49) at 7 (noting Olson Kundig could refile the motion to compel if substitute counsel appeared for 12th Avenue Iron).)  The court ordered 12th Avenue Iron to find substitute counsel by March 7, 2023, and warned 12th Avenue Iron that failure to timely find

//

1    substitute counsel may result in the dismissal of its counterclaims and/or entry of default

2    against it.  (*Id.*)

3           12th Avenue Iron failed to retain new counsel by March 7, 2023.  (*See generally*

4    Dkt.)  As a result, on March 8, 2023, the court dismissed 12th Avenue Iron's

5    counterclaims with prejudice, directed the Clerk to enter a default against 12th Avenue

6    Iron, and ordered Olson Kundig to file a motion for default judgment no later than May 8,

7    2023.  (3/8/23 Order (Dkt. # 50); s*ee also* 4/28/23 Min. Order (Dkt. # 59) (striking

8    answers).)  The Clerk entered default that same day (Entry of Default (Dkt. # 51)), and

9    Olson Kundig filed the instant motion for default judgment on April 12, 2023 (*see* Mot.).

10                            **III.    ANALYSIS**

11           The court begins by discussing the relevant legal standard governing motions for

12    default judgment before discussing the merits of Olson Kundig's motion.

13    **A.    Legal Standard**

14           If a defendant fails to plead or otherwise defend, the clerk enters the party's

15    default.  Fed. R. Civ. P. 55(a).  Then, upon a plaintiff's request or motion, the court may

16    grant default judgment for the plaintiff.  *Id.* 55(b)(2).  Entry of default judgment is left to

17    the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

18    Because granting or denying relief is within the court's discretion, a defendant's default

19    does not automatically entitle a plaintiff to a court-ordered judgment.  *Id.*  In exercising

20    its discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of

21    prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's

22    claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at

1   stake in relationship to the defendant's behavior; (5) the possibility of a dispute

2   concerning material facts; (6) whether default was due to excusable neglect; and (7) the

3   preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782

4   F.2d 1470, 1471-72 (9th Cir. 1986).

5          Generally, default judgment is a two-step process:  first, the court determines that

6   a default judgment should be entered; then, it determines the amount and character of the

7   relief that should be awarded. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

8   (9th Cir. 1987).  At the default judgment stage, well-pleaded factual allegations in the

9   complaint, except those related to damages, are considered admitted and are sufficient to

10   establish a defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

11   1977); Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18.  The court must ensure that

12   the amount of damages is reasonable and demonstrated by the plaintiff's evidence. *See*

13   Fed. R. Civ. P. 55(b)(2) (stating that the court may hold such hearings as it deems

14   necessary in order to determine the amount of damages, to establish the truth of any

15   averment by evidence, or to make an investigation of any other matter necessary in order

16   to enable the court to enter or effectuate judgment); Local Rules W.D. Wash. LCR

17   55(b)(2); *TeleVideo*, 826 F.2d at 917-18.

18   **B.    Jurisdiction**

19          "To avoid entering a default judgment that can later be successfully attacked as

20   void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the

21   judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  First, there

22   can be no reasonable dispute that the court has subject matter jurisdiction over this

matter.  The court has federal question jurisdiction over Olson Kundig's claims for patent infringement under the Patent Act, 35 U.S.C. § 271, and trademark infringement under the Lanham Act, 15 U.S.C. § 1114.  28 U.S.C. § 1331; *see also* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . and trademarks.").  Additionally, the court has supplemental jurisdiction over Olson Kundig's WCPA, WPRA, and Washington common law trademark infringement claims because those claims are "so related" to the federal trademark and patent infringement claims as to "form part of the same case or controversy."  28 U.S.C. § 1367.

Second, the court has personal jurisdiction over 12th Avenue because it is incorporated in Washington and has its principal place of business in Washington, it was properly served by Olson Kundig, and it appeared in this action without challenging personal jurisdiction.  (*See generally* Compl. ¶ 4; Aff. Service (Dkt. # 11); Dkt.); Fed. R. Civ. P. 4(k)(1); *AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("[A] corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business."  (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137-40 (2014)).

**C.   Whether the *Eitel* Factors Favor Default Judgment**

Default judgment is warranted in this case because, on balance, the *Eitel* factors weigh in favor of such judgment.  The court discusses each factor in turn.

//

//

1        1. <u>Possibility of Prejudice to Plaintiff</u>

2        The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

3    judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

4    1177 (C.D. Cal. 2002).  Without allowing default judgment, Olson Kundig will suffer

5    prejudice because it will "be denied the right to judicial resolution" of its claims and will

6    be "without other recourse for recovery." *Elektra Entm't Grp. Inc. v. Crawford*, 226

7    F.R.D. 388, 391 (C.D. Cal. 2005); *see also, e.g.*, *Schenker, Inc. v. Predator Mogulwear*

8    *Inc.*, No. C 07-01795 WHA, 2007 WL 4556915, at *2 (N.D. Cal. Dec. 20, 2007) (finding

9    plaintiff would be prejudiced absent entry of default judgment in light of defendant's

10   refusal to obtain new counsel and appear in the action).  Thus, the first *Eitel* factor weighs

11   in favor of entering default judgment.

12       2. <u>Substantive Merits and Sufficiency of the Complaint</u>

13       The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

14   and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

15   *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

16   judgment, the complaint's allegations must be sufficient to state a claim for relief.

17   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

18   standard when the claims "cross the line from the conceivable to plausible." *Ashcroft v.*

19   *Iqbal*, 556 U.S. 662, 680 (2009) ("A pleading that offers 'labels and conclusions' or 'a

20   formulaic recitation of the elements of a cause of action will not do.'  Nor does a

21   complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

22   enhancement.'"  (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555, 557 (2007))).  At the default judgment stage, the court "takes 'the well-pleaded

factual allegations' in the complaint 'as true'"; however, "necessary facts not contained

in the pleadings, and claims which are legally insufficient, are not established by default."

*DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Cripps v. Life Ins. Co.

of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Therefore, for each cause of action Olson Kundig asserts, the court must review

the standards for stating plausible claims for relief and determine whether Olson

Kundig's allegations are sufficient to state a claim.

   *a.  Breach of Contract*

To state a claim for breach of contract under Washington law, a plaintiff must

show (1) the existence of a valid contract, (2) breach of that contract, and (3) damages

resulting from the breach.  *Fid. & Deposit Co. of Md. v. Dally*, 201 P.3d 1040, 1044

(Wash. Ct. App. 2009) (citing *Lehrer v. Dep't of Social & Health Servs.*, 5 P.3d 722, 727

(Wash. Ct. App. 2000)); *Nw. Indep. Forest. Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6,

9 (Wash. Ct. App. 1995) ("A breach of contract is actionable only if the contract imposes

a duty, the duty is breached, and the breach proximately causes damage to the

claimant.").

First, the court has already concluded, in granting Olson Kundig's motion for a

preliminary injunction, that Olson Kundig had sufficiently alleged that the Agreement is

an enforceable contract.  (*See* 9/12/22 Order at 14-20.[4])  Second, the allegations in Olson

---

[4] The court incorporates by reference the relevant analysis in the court's order granting
Olson Kundig's motion for a preliminary injunction.

1    Kundig's complaint establish that 12th Avenue Iron materially breached the Agreement

2    when it "stopped adequately fulfilling orders" for Tom Kundig Collection products in

3    2020 and failed to pay Olson Kundig any royalties for the sales of such products in 2021

4    and 2022.  (*See* Compl. ¶¶ 37, 40-43, 46, 71-76; Agreement ¶¶ 1.3-1.4 (outlining those

5    duties); *see also* 9/12/22 Order at 9-11 (discussing evidence of the breaches and noting

6    that the evidence established that 12th Avenue Iron stopped paying royalties in the last

7    quarter of 2020).)  Third, Olson Kundig alleges that, because of 12th Avenue Iron's

8    breach, Olson Kundig has "suffered substantial harm and damages."  (Compl. ¶¶ 75-79;

9    *see, e.g.*, *id.* ¶ 41 (discussing 12th Avenue Iron's failure to pay two years' worth of

10   royalties); *id.* ¶¶ 175-77 (alleging that 12th Avenue Iron's continued, unauthorized use of

11   the Marks is damaging Olson Kundig's brand value and goodwill).)  Thus, Olson

12   Kundig's allegations, taken as true, establish a breach of contract claim.

13             *b.  Patent and Trademark Infringement*

14          In granting Olson Kundig's motion for a preliminary injunction, this court

15   analyzed the substantive allegations in the complaint and determined that Olson Kundig

16   sufficiently stated plausible claims for patent infringement and trademark infringement

17   and was likely to prevail on the merits of those claims.  (*See* 9/12/22 Order at 24-33[5]);

18   *see, e.g.*, *MERSCORP Holdings, Inc. v. MERS, Inc.*, No. 16-CV-04380-BLF, 2017 WL

19   1709351, at *3 (N.D. Cal. May 3, 2017) (declining to reanalyze plaintiffs' claims in

20   default judgment order because court already concluded plaintiffs were likely to succeed

21

22        [5] The court incorporates by reference the relevant analysis in the court's order granting
Olson Kundig's motion for a preliminary injunction.

1   on claims in granting motion for preliminary injunction).  Accordingly, the second and

2   third *Eitel* factors favor entry of default judgment on Olson Kundig's claims for design

3   patent infringement under 35 U.S.C. § 271, trademark infringement under 15 U.S.C.

4   § 1114, and trademark infringement under Washington common law.

5            *c.  Washington Consumer Protection Act*

6          Under the WCPA, a private plaintiff must prove:  (1) an unfair or deceptive act or

7   practice; (2) occurring in trade or commerce; (3) that impacts the public interest;

8   (4) causes injury to the plaintiff's business or property; and (5) that injury is causally

9   linked to the unfair or deceptive act.  *Hangman Ridge Training Stables, Inc. v. Safeco*

10  *Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  "Absent unusual circumstances, the

11  analysis of a [W]CPA claim will follow that of the [federal] trademark infringement and

12  unfair competition claims; it will turn on the likelihood of confusion regarding a

13  protectable mark."  *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192

14  (W.D. Wash. 2010) (citing *Seattle Endeavors, Inc. v. Mastro*, 868 P.2d 120, 127 (Wash.

15  1994) (noting that trademark or trade name infringement typically establishes a WCPA

16  violation)).

17         The court has already found that Olson Kundig sufficiently alleged facts to

18  establish a likelihood of confusion in its analysis of Olson Kundig's trademark

19  infringement claims.  (*See supra* § III.2.b (citing 9/12/22 Order at 24-36).)  Olson Kundig

20  also sufficiently alleges facts to support each of the five elements of a WCPA claim.

21  (Compl. ¶¶ 159-65.)  Accordingly, the court concludes that Olson Kundig has stated a

22  claim for unfair and deceptive trade practices under the WCPA.

1          *d.   Washington Personality Rights Act*

2          The WPRA provides that "[e]very individual or personality has a property right in

3    the use of his or her name, voice, signature, photograph, or likeness."  RCW 63.60.010;

4    *see also* RCW 63.60.030(1) ("Such right shall be freely transferable, assignable, and

5    licensable, in whole or in part, by contract . . . ."); RCW 63.60.040(1) ("For individuals,

6    except to the extent that the individual may have assigned or licensed such rights, the

7    rights protected in this chapter are exclusive to the individual, subject to the assignment

8    or licensing of such rights . . . .").  A violation of the WPRA occurs, in relevant part,

9    when a "person . . . uses or authorizes the use of a living . . . individual's or personality's

10   name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products

11   entered into commerce in this state . . . without written or oral, express or implied consent

12   of the owner of the right."  RCW 63.60.050.

13          According to Olson Kundig, it is a "licensee of Mr. Kundig's name and obtained

14   property right to use Mr. Kundig's name to promote and advertise products designed by

15   Mr. Kundig."  (Compl. ¶ 149); *see also* RCW 63.60.030-.040.  Although Olson Kundig

16   authorized 12th Avenue Iron to use Mr. Kundig's name in conjunction with the Tom

17   Kundig Collection under the Agreement, 12th Avenue Iron continued to use "Mr.

18   Kundig's name to promote and sell the Tom Kundig Collection line products to its own

19   commercial advantage within Washington State" after Olson Kundig terminated the

20   Agreement.  (Compl. ¶¶ 150-51 (alleging that 12th Avenue Iron has no other license or

21   authorization to use Mr. Kundig's name).)  Olson Kundig alleges that 12th Avenue Iron's

22   continued, unauthorized use of Mr. Kundig's name infringes on Olson Kundig's licensed

1  personality rights, which, in turn, "damages Olson Kundig by diminishing the value of

2  Mr. Kundig's personality rights" and causes Olson Kundig "direct monetary damage."

3  (*Id.* ¶¶ 152-55; *id.* ¶ 148 (stating that Mr. Kundig's name "has commercial value").)

4  Therefore, Olson Kundig sufficiently states a claim for violation of the WPRA.

5       3.  <u>Sum of Money at Stake</u>

6       The fourth *Eitel* factor considers the sum of money at stake in a case "in relation to

7  the seriousness of the defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  When

8  the amount at stake is substantial or unreasonable in light of the allegations in the

9  complaint, default judgment is disfavored.  *See Eitel*, 782 F.2d at 1472 (affirming the

10  denial of default judgment where the plaintiff sought $3 million in damages and the

11  parties disputed material facts in the pleadings).  "However, when the sum of money at

12  stake is tailored to the specific misconduct of the defendant, default judgment may be

13  appropriate."  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

14       Here, Olson Kundig seeks (1) $110,879.94 in unpaid royalties under the

15  Agreement, as well as prejudgment interest on that amount; (2) a permanent injunction;

16  (3) attorneys' fees and costs; (4) statutory or actual damages under the WPRA; and (5)

17  actual damages under the Lanham and Patent Acts, as well as the WCPA.  (*See* Mot. at 6-

18  8, 15-16; Prop. Order.)  However, Olson Kundig fails to set forth a monetary value for its

19  actual damages under the Lanham Act, Patent Act, WCPA, and WPRA, and instead seeks

20  limited discovery to determine the existence and amount of such damages.  (*See id.* at

21  7-8; *see also infra* § III.D.8 (granting in part request for additional discovery).)  Without

22  knowing the total amount of damages sought, the court is unable to balance the amount of

1    money at stake with the seriousness of 12th Avenue Iron's conduct.  Accordingly, this

2    factor does not weigh in favor of default judgment.  *See Oakley, Inc. v. Moda Collection,*

3    *LLC*, No. SACV16160JLSJCGX, 2016 WL 7495835, at *6 (C.D. Cal. June 9, 2016)

4    (reaching the same conclusion when amount of total damages were unknown and court

5    authorized limited damages discovery).

6         4.  Possibility of a Dispute over Material Facts

7         "The fifth *Eitel* factor considers the possibility of dispute as to any material facts

8    in the case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  Where, as here, the defendant has

9    defaulted, the court must take all well-pleaded allegations in the complaint as true, except

10   those related to damages.  *TeleVideo*, 826 F.2d at 917-18; *Wecosign, Inc. v. IFG*

11   *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed

12   a well-pleaded complaint, the possibility of dispute concerning material facts is

13   remote.").  12th Avenue Iron has admitted the allegations in the complaint by failing to

14   participate in this action and allowing its answers to be stricken and its default entered.

15   (*See* 3/8/23 Order; Entry of Default; 4/28/23 Min. Order.)  Accordingly, there is nothing

16   to suggest a possible dispute of material facts in this case, and this factor weighs in favor

17   of granting default judgment.  *See, e.g.*, *Yoon Chul Yoo v. Arnold*, No.

18   CV0907483MMMCWX, 2013 WL 12335872, at *8 (C.D. Cal. Mar. 25, 2013) (finding

19   dispute over material facts unlikely after plaintiff's answer to counterclaims was stricken

20   following his failure to, among other things, follow court orders), *aff'd*, 615 F. App'x 868

21   (9th Cir. 2015).

22   //

5. <u>Excusable Neglect</u>

The sixth *Eitel* factor considers the possibility that the defendant's default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see, e.g.*, *Wecosign*, 845 F. Supp. 2d at 1082 ("This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."). Certain circumstances surrounding a party's failure to respond may constitute excusable neglect and weigh against default judgment. *See, e.g.*, *Eitel*, 782 F.2d at 1472 (finding defendant's failure to answer due to excusable neglect where the parties reached a settlement agreement prior to the deadline to answer).

Here, 12th Avenue Iron was properly served and participated in this matter until its counsel of record withdrew. (*See* Aff. Service; 2/21/23 Order; Dkt.) Although 12th Avenue Iron was given multiple warnings and sufficient time to obtain new counsel, it failed to do so. (*See* 3/8/23 Order; 2/21/23 Order at 7 (giving 12th Avenue Iron two weeks to find new counsel and warning 12th Avenue Iron that failure to timely find new counsel may result in the dismissal of its counterclaims and/or entry of default against it); MTW at 3 (warning 12th Avenue Iron of the same in January 2023); Dkt.) In light of these repeated warnings, there is nothing in the record to indicate that 12th Avenue Iron's default was due to excusable neglect. *See, e.g.*, *Degla Grp. for Invs., Inc. v. BoConcept USA, Inc.*, No. 09-05278 MMM (AGRX), 2012 WL 12952731, at *2, 8 (C.D. Cal. July 19, 2012) (finding no excusable neglect where default was entered after defendant failed to timely obtain new counsel). Accordingly, the court concludes that the sixth *Eitel* factor thus weighs in favor of default judgment.

1        6.  <u>Policy Favoring Decisions on the Merits</u>

2        Although there is a preference for deciding cases on the merits, this preference is

3    not an absolute requirement.  *See Vawter v. Quality Loan Serv. Corp. of Wash.*, No.

4    C09-1585JLR, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011).  12th Avenue

5    Iron's failure to obtain new counsel and defend itself in this action "makes a decision on

6    the merits impractical, if not impossible."  *PepsiCo*, 238 F. Supp. 2d at 1177 (noting

7    when a defendant fails to appear or defend, the "preference to decide cases on the merits

8    does not preclude [t]he court from granting default judgment"); *see* Local Rules W.D.

9    Wash. LCR 83.2(b)(4) (stating that corporations must be represented by counsel).

10   Accordingly, court concludes that the seventh *Eitel* factor does not preclude entry of

11   default judgment.

12       Because the *Eitel* factors weigh in favor of default judgment, the court concludes

13   that default judgment is warranted in favor of Olson Kundig on its claims against 12th

14   Avenue Iron.

15   **D.   Requested Relief**

16       The court now turns to the issue of remedies.  "A default judgment must not differ

17   in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P.

18   54(c); *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting defendants

19   are not deemed to have admitted the facts alleged in the complaint concerning the amount

20   of damages.  *TeleVideo*, 826 F.2d at 917.  A plaintiff "must 'prove up' the amount of

21   //

22   //

1  damages that it is claiming." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219

2  F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash LCR 55(b)(2).[6]

3       Here, Olson Kundig seeks damages in the form of unpaid royalties in connection

4  with its breach of contract claim, statutory damages under the WPRA, permanent

5  injunctive relief, attorneys' fees and costs, and prejudgment and post-judgment interest.

6  (*See* Mot. at 6-8, 11-16; Prop. Order at 2-3.)  Olson Kundig also requests post-judgment

7  discovery to determine the total amount of actual damages sustained in connection with

8  Olson Kundig's patent infringement, trademark infringement, WCPA, and WPRA

9  claims.  (*See* Mot. at 7-8, 15-16; Prop. Order at 2-3.)  Below, the court discusses whether

10  the requested relief differs from the relief requested in the complaint and whether Olson

11  Kundig is entitled to the relief it requests.

12       1.  <u>Attorneys' Fees</u>

13       Olson Kundig seeks an award of attorneys' fees under the Lanham Act, the Patent

14  Act, the WCPA, and the WPRA in the amount of $130,896.04.  (Mot. at 14-15; Hodges

15  Decl. ¶¶ 16-20 (Dkt. # 53); Supp. Mem. at 2-5; *see* Compl. at 22 (requesting attorneys'

16  fees in prayer for relief).)

---

[6] This court's Local Rules require plaintiffs to support a motion for default judgment with:

> a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain and to any nonmonetary relief sought.  [The] [p]laintiff shall provide a concise explanation of how all amounts were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought. . . .

Local Rules W.D. Wash. LCR 55(b)(2).

1        *a.    Entitlement to Attorneys' Fees*

2        The court first evaluates whether Olson Kundig is eligible to recover attorneys'

3    fees in connection with work performed on each of its six claims.

4                    i.  WCPA and WPRA Claims

5        With respect to Olson Kundig's WCPA and WPRA claims, the statutes provide

6    that the prevailing party may recover its reasonable attorneys' fees.  *See* RCW 19.86.090;

7    RCW 63.60.060(5); *see also St. Paul Fire & Marine Ins. Co. v. Updegrave*, 656 P.2d

8    1130, 1134 (Wash. Ct. App. 1983).  Because the court has already concluded that Olson

9    Kundig stated claims for violations of the WCPA and WPRA (*see supra* § III.C.2), an

10   award of fees for work performed on Olson Kundig's WCPA and WPRA claims is

11   appropriate.

12                   ii.  Lanham Act and Patent Act Claims

13       Under the Lanham and Patent Acts, the court may award attorneys' fees to the

14   prevailing party in "exceptional" trademark and patent infringement cases.  15 U.S.C.

15   § 1117(a)(3); 35 U.S.C. § 285.  "District courts may determine whether a case is

16   'exceptional' in the case-by-case exercise of their discretion, considering the totality of

17   the circumstances."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545,

18   554-57 & n.6 (2014) (interpreting fee requests under the Patent Act); *see also SunEarth,*

19   *Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (making the

20   *Octane Fitness* test applicable to fee claims under the Lanham Act).  Factors to consider

21   include "frivolousness, motivation, objective unreasonableness (both in the factual and

22   legal components of the case)[,] and the need in particular circumstances to advance

1   considerations of compensation and deterrence."  *Octane Fitness*, 572 U.S. at 554 & n.6

2   (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)) ("[A]n 'exceptional'

3   case is simply one that stands out from others with respect to the substantive strength of a

4   party's litigating position (considering both the governing law and the facts of the case)

5   or the unreasonable manner in which the case was litigated.").

6       Here, Olson Kundig has prevailed on its claims for violations of the Lanham and

7   Patent Acts.  (*See supra* § III.C.2 (finding Olson Kundig likely to succeed on the merits

8   of these claims and default judgment appropriate).)  Olson Kundig is, therefore, a

9   prevailing party eligible for an award of reasonable attorneys' fees under the Lanham and

10  Patent Acts, if this case is "exceptional."  Olson Kundig argues that this is an

11  "exceptional case" under the *Octane Fitness* standard because "the strength of [its]

12  allegations . . . make this case 'stand out from others'" and because 12th Avenue Iron

13  willfully infringed Olson Kundig's Marks and Design Patents.  (Mot. at 14-15; Supp.

14  Mem. at 3-5.)

15      The court agrees.  First, Olson Kundig's patent and trademark infringement claims

16  against 12th Avenue Iron are clearly substantive and this action is not frivolous.  Olson

17  Kundig obtained a preliminary injunction despite 12th Avenue Iron's opposition,

18  demonstrating a likelihood of success on the merits of both claims.  (*See generally* PI

19  Mot.; PI Resp.; 9/12/22 Order at 40 (determining "that it is more likely than not that the

20  Marks and Design Patents are valid; that Olson Kundig owns the Marks and Design

21  Patents; and that 12th Avenue's continued use of Olson Kundig's Marks and Design

22  Patents is unauthorized because 12th Avenue Iron no longer hold a license to use the

Marks and Design Patents"); *see also id.* at 21-23 (concluding that 12th Avenue Iron was

unlikely to succeed on its defense to liability).)  Additionally, in light of 12th Avenue

Iron's default, Olson Kundig's factual allegations concerning 12th Avenue Iron's patent

and trademark infringement must be taken as true.  *DIRECTV*, 503 F.3d at 854.  "These

admissions [further] demonstrate, legally and factually, the substantive strength of the

[Olson Kundig's] position, while [12th Avenue Iron] fail[s] to take a 'litigating position'

at all."  *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No.

3:17-CV-00466-LAB-NLS, 2018 WL 2328471, at *11 (S.D. Cal. May 23, 2018),

*supplemented*, 2018 WL 2948532 (S.D. Cal. June 12, 2018), *and report and*

*recommendation adopted*, 2018 WL 3032585 (S.D. Cal. June 19, 2018).

Second, a fee award will advance considerations of compensation and deterrence

in light of 12th Avenue Iron's willful infringement and conduct in this litigation.  After

the Agreement was terminated, 12th Avenue Iron was put on notice that it no longer had

a license to use Olson Kundig's Marks and Design Patents.  (Compl. ¶¶ 41-49; Parwani

Decl. ¶ 25, Ex. 10 (termination letter); *see generally* Agreement.)  Yet, until this court

preliminarily enjoined 12th Avenue Iron from further infringement, 12th Avenue Iron

continued to willfully[7] use the Marks and Design Patents without Olson Kundig's

---

[7] Well-pled allegations of willful infringement are deemed admitted upon default.  *See, e.g.*, *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) ("[B]y entry of default judgment, the district court determined, as alleged in [the] complaint, that [defendant's] acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injure [plaintiff].");  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The district court entered default and Poof concedes that its default occurred with respect to a complaint that pled wilfulness [*sic*].  Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks.").

1    consent and without providing Olson Kundig any remuneration.  (*See* Compl. ¶¶ 50-56

2    (describing 12th Avenue Iron's post-termination conduct); *id.* ¶¶ 82-84, 97-99, 111-13,

3    124-26, 171-75 (alleging willful infringement); 9/12/22 Order at 25, 28 (stating that 12th

4    Avenue Iron admitted continued use of the Marks and Design Patents post-termination).

5    Additionally, 12th Avenue Iron's refusal to obtain new counsel and participate in

6    litigation "is an undoubtedly 'unreasonable manner' in which to litigate, and an award of

7    fees is likely to deter this type of conduct in the future."  *Left Coast Wrestling*, 2018 WL

8    2328471, at *11; *see also, e.g.*, *ADG Concerns, Inc. v. Tsalevich LLC*, No.

9    18-CV-00818-NC, 2018 WL 4241967, at *13 (N.D. Cal. Aug. 31, 2018), *report and*

10   *recommendation adopted*, No. 18-CV-00818-JSW, 2018 WL 6615139 (N.D. Cal. Nov. 1,

11   2018) ("Courts applying the *Octane Fitness* analysis commonly find that willful

12   infringement, in conjunction with non-participation in litigation, makes a case

13   'exceptional.'"  (collecting cases)); *Headspace Int'l, LLC v. New Gen Agric. Servs., LLC*,

14   No. 216CV03917RGKGJS, 2017 WL 2903181, at *7 (C.D. Cal. June 19, 2017) (finding

15   case "exceptional" because, among other things, "Defendants' willful action and refusal

16   to participate in this litigation is unexcused and unreasonable").

17       Accordingly, the court finds this case is "exceptional" within the meaning of 15

18   U.S.C. § 1117(a) and 35 U.S.C. § 285.  Olson Kundig may therefore recover reasonable

19   attorneys' fees for its prosecution of its Lanham Act and Patent Act claims.

20            iii. Breach of Contract and Common Law Trademark Infringement Claims

21       Olson Kundig's eligibility to recover attorneys' fees for its Lanham Act, Patent

22   Act, WCPA, and WPRA claims does not extend to fees attributed to counsels' work on

1   Olson Kundig's breach of contract and common law trademark infringement claims.  The

2   Ninth Circuit has held that a prevailing party cannot recover legal fees incurred in

3   litigating non-Lanham Act claims unless the Lanham Act claims and non-Lanham Act

4   claims are "so intertwined that it is impossible to differentiate between work done on

5   claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000).[8]  However, "the

6   impossibility of making an exact apportionment does not relieve the district court of its

7   duty to make some attempt to adjust the fee award in an effort to reflect an

8   apportionment.  In other words, apportionment or an attempt at apportionment is required

9   unless the court finds the claims are so inextricably intertwined that even an estimated

10  adjustment would be meaningless." *Id.*

11       Here, the court finds that the factual and legal bases of Olson Kundig's common

12  law trademark infringement claim are substantially identical to those of the Lanham Act

13  claim because the claims arose out of the same facts and occurrences and the common

14  law trademark infringement claim directly parallels the Lanham Act claim.  (*See*

15  *generally* 9/12/22 Order at 26-33; Compl.)  Given the overlapping evidence and legal

16  analysis, apportioning work between the Lanham Act claim and the common law

17

18       [8] The rule is substantially similar under Washington law and the Patent Act.  *See, e.g.*,

19  *Hume v. Am. Disposal Co.*, 880 P.2d 988, 997 (Wash. 1994) (determining that if "an attorney
    fees recovery is authorized for only some of the claims, the attorney fees award must properly
    reflect a segregation of the time spent on issues for which attorney fees are authorized from time

20  spent on other issues" unless the claims are "so related that no reasonable segregation" can be
    made); *F.B. Leopold Co. v. Roberts Filter Mfg. Co.*, 119 F.3d 15 (Fed. Cir. 1997) (stating that

21  under the Patent Act, "fees are only awarded for work on non-patent issues if those issues are so
    intertwined with the patent issues that the evidence would be material to both types of issues"; if
    they are not so intertwined, the court cannot award fees for the non-patent claims and can instead

22  award an estimate of the amount of work attributable only to the patent portion of the fees).

1   trademark infringement claim would be meaningless.  *See, e.g.*, *SAS v. Sawabeh Info.*

2   *Servs. Co.*, No. CV1104147MMMMANX, 2015 WL 12763541, at *14 (C.D. Cal. June

3   22, 2015) (reaching same conclusion as to plaintiffs' Lanham Act claims and its

4   California statutory and common law trademark and unfair competition claims).

5   Accordingly, the court concludes that Olson Kundig may recover attorneys' fees incurred

6   in the prosecution of its common law trademark infringement claim as well.

7          As to Olson Kundig's breach of contract claim, the court finds that the factual

8   basis of and analysis concerning the breach of contract claim were fairly intertwined with

9   Olson Kundig's Lanham act claim and other recoverable claims.  (*See generally* 9/12/22

10  Order at 14-33 (discussing how the Agreement established Olson Kundig's ownership of

11  the Marks and Design Patents and how 12th Avenue Iron's continued use of the Marks

12  and Design Patents after the Agreement was terminated demonstrated infringement);

13  Compl.; *supra* § III.C.2; Supp. Mem. at 5.)  However, although the court agrees with

14  Olson Kundig that an exact apportionment would be impossible, the court does not find

15  that the breach of contract claim was so intertwined with the recoverable claims as to

16  render an estimated adjustment meaningless.  *See Gracie*, 217 F.3d at 1069-70; *SAS*,

17  2015 WL 12763541, at *18.  The court finds Olson Kundig's proposed 10% downward

18  adjustment to be a reasonable estimate of the time spent prosecuting its non-recoverable

19  breach of contract claim.  (Supp. Mem. at 5.)  Accordingly, the court will reduce the total

20  hours expended by 10%.  (*See infra* § III.D.1.b.ii.)

21  //

22  //

1

       *b.  Whether the Requested Fees are Reasonable*

2

    The court now evaluates the amount of fees that Olson Kundig is entitled to.

3

Olson Kundig requests $130,896.04 in fees reflecting a total of 314.2 attorney hours.

4

(*See* Hodges Decl. ¶ 17, Ex. E ("Time Entries").[9])  To determine whether the requested

5

fees are reasonable, the court applies the "lodestar" method.  *See Camacho v. Bridgeport*

6

*Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The court begins by finding the "lodestar,"

7

which is calculated by multiplying "the number of hours reasonably expended on the

8

litigation" by "a reasonable hourly rate."  *Id.* (quoting *Ferland v. Conrad Credit Corp.*,

9

244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).  Although the resulting figure is presumptively

10

reasonable, the court may, if circumstances warrant, adjust the lodestar figure up or down

11

based on a number of additional factors that have not been subsumed in the initial

12

lodestar calculation.  *Id.* at 977-78 (referencing the factors enumerated in *Kerr v. Screen*

13

*Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).[10]

14

       i.   Hourly Rate

15

    In determining the reasonableness of an hourly rate, courts consider "the rate

16

prevailing in the community for similar work performed by attorneys of comparable skill,

17

experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11

18

19

   [9] Although the timesheet states the total as 377.9 hours, that figure includes the 63.7 hours of work that Olson Kundig's counsel wrote off.  (*See, e.g.*, Time Entries at 5/27/22-Zhou (reflecting 4.8 hours of work but an amount of zero dollars).)  Accordingly, the court characterizes the total hours expended, in relation to the fees requested, as 314.2 hours.

20

21

   [10] Courts may, but are not required to, use the 12 factors set forth in *Kerr* to adjust attorney fee awards.  *See Kerr*, 526 F.2d at 70; *see also, e.g.*, *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (noting that the court need not consider the *Kerr* factors unless necessary to support the reasonableness of the fee award).

22

1   (9th Cir. 1986).  Courts generally use the rates of attorneys practicing in the forum

2   district for comparison.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405-06 (9th Cir.

3   1992); *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (noting that court

4   may rely on its own knowledge and experience regarding fees charged in the area in

5   which it presides).  Here, Olson Kundig requests billing rates for its counsel and other

6   timekeepers as follows:  $585 for partner Ben Hodges, $380 for associate Yeli Zhou,

7   $780 for partner Tim Filer, $595 for partner Jay Donovan, $450 for partner Rylan

8   Weythman, $355 for associate Angelo Marchesini, $360 for associate Agatha Erickson,

9   and $260 for paralegal Renee Stewart.  (*See* Hodges Decl. ¶ 19.)  Based upon the court's

10  familiarity with the rates charged by attorneys in the Seattle legal community who

11  represent clients in similar cases and who have similar qualifications, as well as

12  paralegals with a similar level of experience, the court finds that the rates charged by

13  Olson Kundig's counsel and paralegal are reasonable.  *See, e.g.*, *HDT Bio Corp. v.*

14  *Emcure Pharms., Ltd.*, No. C22-0334JLR, 2022 WL 17668036, at *2 (W.D. Wash. Dec.

15  14, 2022) (approving hourly rates as high as $800).

16                     ii.  Hours Expended and Resulting Lodestar Figure

17          To determine a reasonable number of hours to be compensated, the court must

18  consider "whether, in light of the circumstances, the time could reasonably have been

19  billed to a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

20  2008).  The hours claimed by a party may be reduced by the court if "the documentation

21  of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if

22  the hours expended are deemed excessive or otherwise unnecessary."  *Chalmers*, 796

1  F.2d at 1210; *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)

2  (stating that the court may exclude hours that were not reasonably expended, such as

3  those "that are excessive, redundant, or otherwise unnecessary" (quoting *Hensley v.*

4  *Eckerhart*, 461 U.S. 424, 433-34 (1983))).  When faced with a voluminous fee

5  application, the court has the "authority to make across-the-board percentage cuts either

6  in the number of hours claimed or in the final lodestar figure 'as a practical means of

7  trimming the fat from a fee application.'"  *Gates*, 987 F.2d at 1399 (quoting *N.Y. State*

8  *Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

9       Having reviewed all of the time entries submitted by Olson Kundig's counsel, the

10  court concludes that reductions are required.  First, many time entries are block-billed.[11]

11  (*See* Time Entries.)  Where a timekeeper's billing entry identifies a number of activities

12  but only a single block of time, it makes it very difficult for the court to separate

13  compensable hours from non-compensable hours.  *Welch*, 480 F.3d at 948.  Even where

14  all of the activities listed in the billing entry are recoverable, block-billing may have a

15  tendency to increase the overall time recorded.  *Id.*  Billing in this manner makes it

16  impossible to determine the reasonableness of the work.  *Id.*  As such, Olson Kundig

17  cannot discharge its burden to "document[] the appropriate hours expended" with

18  block-billed entries; any block-billed entries are therefore within the court's discretion to

19  exclude.  *Id.*; *see, e.g.*, *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle*

20

21       [11] A lawyer block-bills by "enter[ing] the total daily time spent working on a case, rather
than itemizing the time expended on specific tasks."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d

22  942, 945 n.2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d
1533, 1554 n.15 (10th Cir. 1996)).

1  *Police Dep't*, 516 F. Supp. 3d 1202, 1214-15 (W.D. Wash. 2021) (reducing fee request

2  for block-billed entries).  Here, Olson Kundig's counsel's records show many instances

3  of impermissible block billing, and the court concludes that these block-billed entries

4  warrant a reduction to the total number of hours claimed.  (*See, e.g.*, Time Entries at

5  6/8/22-Zhou ("Correspondence with B. Hodges regarding Motion for Preliminary

6  Injunction, review sample preliminary injunction motions, legal research regarding

7  preliminary injunction standard and likelihood of success for patent and trademark

8  infringement claims, input research notes and case law in details, draft Notice of Motion,

9  and Memorandum of Law in Support of Motion for Preliminary Injunction."); *id.* at

10  6/15/22-Filer ("Assess draft motion for preliminary injunction; strategy email with Ben

11  Hodges regarding legal arguments and needed factual support for claim of irreparable

12  harm.").)

13       Second, Olson Kundig improperly seeks to recover for time spent moving to

14  dismiss 12th Avenue Iron's WUTSA, WCPA, and unjust enrichment counterclaims

15  without providing any authority for its entitlement to recover these fees.  (*See generally*

16  Time Entries; Mot.; *see also* MTD; 2d MTD.)  The factual and legal bases for the

17  counterclaims are different than those underlying Olson Kundig's recoverable claims.

18  (*Compare* Compl. at 10-20, *with* Ans. at 19-22, and Am. Ans. at 19-27; *see also* 9/28/22

19  Order; 11/16/22 Order.)  As such, the court does not find the counterclaims to be so

20  related to or intertwined with Olson Kundig's Lanham Act claim that it would be

21  //

22  //

ORDER - 28

1    impossible to apportion fees between them.[12]  *See Gracie*, 217 F.3d at 1069-70; *Hume*,

2    880 P.2d at 999.  Accordingly, the court will reduce the total hours expended to account

3    for the work performed with respect to the motions to dismiss 12th Avenue Iron's

4    counterclaims.  *See, e.g.*, *SAS*, 2015 WL 12763541, at *18 (reducing fee award to reflect

5    plaintiff's non-intertwined work on counterclaims).

6    For these reasons, the court concludes that the hours expended in connection with

7    the litigation are not reasonable and that a reduction of the hours expended is appropriate.

8    The court will reduce the hours expended by 20% to account for the block-billing and the

9    work performed on Olson Kundig's motions to dismiss,[13] in addition to the 10%

10   reduction to reflect the time spent on the non-recoverable breach of contract claim.  (*See*

11   *supra* § III.D.1.a.iii.)  The court applies a 30% reduction to each attorney and paralegal's

12   hourly totals and multiplies those values by each relevant hourly rate, for a total lodestar

13   figure of $91,627.23.[14]  The court concludes that this lodestar figure represents a

14   reasonable award of Olson Kundig's attorneys' fees for the work reasonably performed

15   by counsel in connection with Olson Kundig's prosecution of its recoverable claims.

16

17   ──────────────

     [12] Additionally, Olson Kundig does not identify authority entitling prevailing defendants

18   to attorney fee awards with respect to these types of counterclaims.  (*See generally* Mot.)

19   [13] Olson Kundig's counsel's block-billing makes it impossible for the court to determine
     the exact time spent working on Olson Kundig's motions to dismiss.  (*See* Time Entries.)

20   However, "the impossibility of making an exact apportionment does not relieve the district court
     of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment."

     *See Gracie*, 217 F.3d at 1070.  Accordingly, the court attempts to account for the time entries

21   involving the motions to dismiss through its 20% adjustment downward.

     [14] The *Kerr* factors do not warrant an increase or a further reduction in the lodestar figure.

22   *See Camacho*, 523 F.3d at 977-78; *Kerr*, 526 F.2d at 70; *Cairns*, 292 F.3d at 1158.

1        2.  <u>Permanent Injunction</u>

2        Olson Kundig asks the court to permanently enjoin 12th Avenue Iron and its

3    directors, officers, agents, employees, successors, subsidiaries, assigns, affiliates, and all

4    persons acting in privity, concert, or participation with any of the above from continued

5    infringement of the D352 Patent, D197 Patent, D933 Patent, D422 Patent, the OLSON

6    KUNDIG mark, and the TOM KUNDIG COLLECTION mark.  (Prop. Order at 2; Mot.

7    at 13.)  As part of the injunction, Olson Kundig also asks the court to order 12th Avenue

8    Iron to turn over to Olson Kundig "any and all molds that 12th Avenue Iron has related to

9    the Tom Kundig Collection."  (Mot. at 13 (stating that Olson Kundig is entitled to buy the

10   molds from 12th Avenue Iron pursuant to the Agreement and that the court should reduce

11   the total damages awarded by $45,000 upon the return of the molds); Prop. Order at 3.)

12       The first of these requests is identical to the injunctive relief requested in the

13   complaint.  (*See* Compl. at 21.)  The latter request, however, is not included in the

14   complaint (*see id.*), and the court cannot conclude that 12th Avenue Iron was on notice of

15   such a request.  *See, e.g.*, Fed. R. Civ. P. 54(c) ("A default judgment must not differ in

16   kind from, or exceed in amount, what is demanded in the [complaint].");  *Gray Ins. Co. v.*

17   *Lectrfy, Inc.*, No. SACV131411DOCANX, 2014 WL 12689270, at *6 (C.D. Cal. Mar. 3,

18   2014) (discussing why the relief sought at default judgment must be limited to the relief

19   sought in the complaint (citing 10 Charles Alan Wright & Arthur R. Miller, Federal

20   Practice and Procedure § 2663 (3d ed. 1998)));  *United States v. Johnson*, No. C-08-2325

21   JSW (EMC), 2009 WL 10736871, at *6-7 n.5 (N.D. Cal. Apr. 30, 2009), *report and*

22   *recommendation adopted*, No. 08-02325 JSW, 2009 WL 10736870 (N.D. Cal. July 2,

1    2009) (declining to enter permanent injunction with all of plaintiff's proposed terms

2    because some terms were broader than the injunctive relief sought in the complaint).

3    Accordingly, the court DENIES Olson Kundig's request for an injunction ordering 12th

4    Avenue Iron to turn over Tom Kundig Collection molds and analyzes only whether an

5    injunction enjoining further infringement is appropriate.

6         35 U.S.C. § 283 and 15 U.S.C. § 1116(a) vest the district court with the power to

7    grant injunctions to prevent the violation of any right of a patent or trademark owner.

8    When deciding whether to grant permanent injunctions, courts are engaging in "an act of

9    equitable discretion" and must apply "traditional equitable principles" embodied in a

10   four-factor test.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Under that

11   that test, a plaintiff must demonstrate:  (1) that it has suffered an irreparable injury;

12   (2) that remedies available at law, such as monetary damages, are inadequate to

13   compensate for that injury; (3) that, considering the balance of hardships between the

14   plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

15   would not be disserved by a permanent injunction.  *Id.* at 391.

16        The court previously performed a detailed analysis of Olson Kundig's request for

17   injunctive relief in its order granting Olson Kundig's motion for a preliminary injunction

18   and incorporates by reference the relevant portions of that analysis.  (*See* 9/12/22 Order at

19   33-41 (discussing evidence and case law supporting the court's conclusions with respect

20   to irreparable harm/inadequacy of legal remedies, balance of hardships, and public

21   interest).)  In light of that analysis (*id.* at 33-41), as well as 12th Avenue Iron's default,

22   the court concludes that Olson Kundig has met its burden to show that an injunction

1    enjoining 12th Avenue Iron from further infringement of Olson Kundig's Marks and

2    Design Patents is appropriate.  *See, e.g.*, *Restoration Hardware, Inc. v. Sichuan Wei Li*

3    *Tian Xia Network Tech. Co., Ltd.*, No. 22-CV-03054-JSC, 2023 WL 2815358, at *8

4    (N.D. Cal. Apr. 5, 2023) (relying on court's preliminary injunction analysis in granting

5    permanent injunction).  Moreover, the court has reviewed Olson Kundig's proposed

6    language with respect to the injunction enjoining further infringement and is satisfied that

7    it is not over-broad.  *See, e.g.*, *Philip Morris*, 219 F.R.D. at 502 (entering, in trademark

8    infringement case, a permanent injunction enjoining "Defendant and its officers, agents,

9    servants, employees, and attorneys, and all those persons in active concert or

10   participation with them who receive actual notice of the order by personal service or

11   otherwise" from further infringement).  Accordingly, the court GRANTS Olson Kundig's

12   request to permanently enjoin 12th Avenue Iron and its directors, officers, agents,

13   employees, successors, subsidiaries, assigns, affiliates, and all persons acting in privity,

14   concert, or participation with any of the above from continued infringement of the D352

15   Patent, D197 Patent, D933 Patent, D422 Patent, the OLSON KUNDIG mark, and the

16   TOM KUNDIG COLLECTION mark.

17        3.  Royalties Owed Under the Agreement

18        Olson Kundig seeks an award of $110,879.94 in unpaid royalties that are owed

19   under the parties' Agreement.  (Mot. at 6-7; Hodges Decl. ¶¶ 11-14.)  The complaint

20   requests damages on Olson Kundig's breach of contract claim, and the allegations in the

21   complaint put 12th Avenue Iron on notice that Olson Kundig intended to seek damages in

22   the form of unpaid royalties.  (*See* Compl. at 9-10, 21.)

1      Pursuant to the Agreement, 12th Avenue Iron had an obligation to pay Olson

2  Kundig "a royalty of seven percent (7%) of the gross amount received from the sale of"

3  Tom Kundig Collection products, and this obligation to pay royalties survived any

4  termination of the Agreement.  (Agreement ¶¶ 1.4, 3.2; Compl. ¶¶ 37-44.)  12th Avenue

5  Iron, however, stopped paying Olson Kundig any royalties in the last quarter of 2020.

6  (*See, e.g.*, Parwani Decl. ¶¶ 20-21; Hodges Decl. ¶ 11.)  Olson Kundig substantiates the

7  amount of unpaid royalties through 12th Avenue Iron's own records showing the total

8  order value for each Tom Kundig Collection product order placed from the fourth quarter

9  of 2020 to the last order in June 2022.[15]  (*See* Mot. at 6 (citing Marks Decl. (Dkt. # 15)

10  ¶¶ 45-47, Exs. E-G).)  These records substantially support Olson Kundig's claim for

11  $110,879.94 in unpaid royalties owed under the Agreement.  Accordingly, the court

12  AWARDS Olson Kundig $110,879.94 in unpaid royalties.

13       4.  Prejudgment Interest

14       Olson Kundig also seeks prejudgment interest on the $110,879.94 owed under the

15  Agreement.  (Mot. at 7.)  It asserts that because "the amount of royalties at issue can be

16  calculated with precision and without reliance on opinion or discretion, prejudgment

17  interest is allowed at the statutory judgment interest rate of 12% per annum."  (*Id.*

18  ("Application of this [prejudgment interest] brings the total to $121,524.41.").)  Olson

19  Kundig did not, however, allege entitlement to prejudgment interest in its complaint.

20

21       [15] Although Olson Kundig states it "is aware additional sales were made after June
2022," "it is not including royalties for those additional sales at this time because those numbers
were exchanged during settlement and were not publicly filed."  (Mot. at 6 n.2 (citing Hodges
22  Decl. ¶ 14).)

1  (*See* Compl. 9-10, 21-22.)  Because Olson Kundig "did not pray for such damages in the

2  complaint, and no meaningful notice of the possibility that such amounts would be

3  awarded has been given, [Olson Kundig] cannot recover prejudgment interest." *Landstar*

4  *Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 923-24 (C.D. Cal. 2010); *see*

5  *also, e.g.*, *Berholtz v. P4 Meditech Analytics, LLC*, 600 F. Supp. 3d 1128, 1136 (S.D. Cal.

6  2022) (denying plaintiff's request for prejudgment interest where plaintiff did not request

7  such interest in its complaint, concluding that plaintiff's general request for "[s]uch other

8  relief as may be appropriate" was insufficient to justify the request).  Accordingly, the

9  court DENIES Olson Kundig's request for prejudgment interest.

10        5.  Statutory Damages under the WPRA

11        Olson Kundig requests either the minimum award under the WPRA of $1,500 or

12  an award of the actual damages sustained from 12th Avenue Iron's infringement of Olson

13  Kundig's personality rights.  (Mot. at 8, 15-16; *see* Compl. at 22 (requesting the same

14  damages in connection with WPRA claim).)  Under the WPRA, "[a]ny person who

15  infringes the rights under this chapter shall be liable for the greater of one thousand five

16  hundred dollars or the actual damages sustained as a result of the infringement."  RCW

17  63.60.060(2).  Olson Kundig prevailed on its WPRA claim (*see supra* § III.C.2.d), but

18  has not yet established any actual damages resulting from 12th Avenue Iron's WPRA

19  violation.  (*See generally* Mot. at 8.)  However, because the court will allow Olson

20  Kundig to conduct limited discovery to determine the existence of any such actual

21  damages (*see infra* § III.D.8), the court DEFERS ruling on whether it is appropriate to

22  award Olson Kundig $1,500 in statutory damages under the WPRA.

1    6.   Costs

2    Olson Kundig requests $1,368.00 in litigation costs, including $640.00 in filing

3    fees and $728.00 in process server fees.  (Mot. at 15; Hodges Decl. ¶ 22, Ex. F; *see*

4    Compl. at 22 (requesting costs incurred in the prosecution of this action).)  Federal Rule

5    of Civil Procedure 54(d) allows an award of "costs" to the prevailing party.  Fed. R. Civ.

6    P. 54(d); *see* 28 U.S.C. § 1920 (listing taxable costs, such as clerk's fees, that the court

7    may award under Rule 54(d)); *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d

8    175, 178 (9th Cir.1990) (holding that private service of process costs are recoverable,

9    taxable costs under Rule 54(d) and 28 U.S.C. § 1920).  The Lanham Act also permits a

10   plaintiff who proves a Lanham Act violation to recover "the costs of the action."  15

11   U.S.C. § 1117(a) (allowing costs to plaintiff in any such case, regardless of if the case is

12   "exceptional").  Under either provision, Olson Kundig is entitled to recover the costs of

13   this action.  (*See supra* § III.C.2 (concluding that Olson Kundig prevailed on its claims));

14   *see, e.g.*, *Kiraco, LLC v. Khalil-Mamoon.com*, No. LACV2102166JAKJCX, 2022 WL

15   2155972, at *10 (C.D. Cal. Jan. 20, 2022) (concluding that successful trademark

16   infringement plaintiff could recover costs under either provision).  Accordingly, after

17   entry of judgment, Olson Kundig may file motion to tax costs/bill of costs pursuant to the

18   procedures set forth in Local Rule 54(d).  *See* Local Rules W.D. Wash. LCR 54(d).

19   7.   Post-Judgment Interest

20   Olson Kundig also requests post-judgment interest on any judgment entered.

21   (Prop. Order at 2.)  Although Olson Kundig does not request this relief in its complaint

22   (*see generally* Compl.), "[u]nder the provisions of 28 U.S.C. § 1961, post-judgment

1   interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters*

2   *at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995); *see also Berholtz*, 600 F. Supp.

3   3d at 1136 (stating that post-judgment interest is automatically applicable in federal

4   cases, regardless of whether it was prayed for in the complaint).  Post-judgment interest

5   applies to the entire judgment, including principal, pre-judgment interest if applicable,

6   attorneys' fees, and costs.  *Air Separation*, 45 F.3d at 291.  The post-judgment interest

7   "shall be calculated from the date of the entry of the judgment, at a rate equal to the

8   weekly average 1–year constant maturity Treasury yield, as published by the Board of

9   Governors of the Federal Reserve System, for the calendar week preceding . . . the date of

10  the judgment."  28 U.S.C. § 1961(a).  Because the court will not enter final judgment at

11  this time, the court will defer calculating the applicable interest rate until after it rules on

12  Olson Kundig's supplemental damages request.

13      8.  Request for Damages Discovery

14          Olson Kundig asks the court to order, and allow it leave to conduct, post-judgment

15  discovery "to establish 12th Avenue Iron's detailed sales and profit information

16  associated with the Tom Kundig Collection line for the time in question so as to

17  determine what amount, if any, 12th Avenue Iron owes Olson Kundig beyond the

18  aforementioned minimum contractual royalty payments."  (Mot. at 7.)  Because 12th

19  Avenue Iron failed to respond to Olson Kundig's discovery requests, Olson Kundig

20  argues that post-judgment discovery is therefore necessary "to determine any lost profits,

21  disgorgement, or a reasonable royalty based on 12th Avenue Iron's unauthorized use of

22  the marks and design patents" and any "actual damages sustained resulting from 12th

1    Avenue Iron's infringement of Olson Kundig's personality rights and its violation of [the
2    WCPA]."  (*Id.* at 7-8.)

3        The court GRANTS in part Olson Kundig's request for damages discovery and
4    orders limited damages discovery.  *See, e.g.*, *Warm Bros. v. N. E. Hardwood Flooring,*
5    *Inc.*, No. 3:09-CV-05223-RBL, 2009 WL 3787411, at *2 (W.D. Wash. Nov. 9, 2009)
6    (ordering defaulting defendant to produce limited damages discovery before entry of
7    judgment); *Oakley*, 2016 WL 7495835, at *7, 9 (allowing plaintiff to pursue limited
8    damages discovery prior to entry of judgment); *Tech. LED Intell. Prop., LLC v. Revogi,*
9    *LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *6 (N.D. Cal. June 27, 2019) (same).
10   Rather than allow Olson Kundig to conduct post-judgment discovery, the court will defer
11   the entry of final judgment until after it determines what, if any, additional damages
12   Olson Kundig is entitled to.  Accordingly, the court ORDERS 12th Avenue Iron to, **by no**
13   **later than June 5, 2023**, serve on counsel for Olson Kundig, a report which provides
14   documentation of all its sales of Tom Kundig Collection products, sufficient to show the
15   revenue and profit received for each sale.[16]

16       To the extent Olson Kundig intends to file a supplemental damages request in light
17   of this discovery, it must file a supplemental motion for damages **by no later than**
18   **August 4, 2023**.  In its supplemental motion, Olson Kundig must address the evidence
19   and law supporting any damages it requests and whether any of the additional damages

20

21       _____
         [16] *See, e.g.*, *Tech. LED*, 2019 WL 2716610, at *6 (explaining that a party may serve
22   damages discovery on a defaulting party by leave of the court, without complying with Rule
     26(f)'s meet-and-confer requirement).

1  would be duplicative of one another or of damages already awarded.  *See, e.g.*,

2  Restatement (Third) of Torts § 3(a) (2022) ("[A] plaintiff cannot recover an amount of

3  compensatory damages that exceeds one full compensation for each harm that plaintiff

4  suffered.").  If Olson Kundig fails to timely file such a supplemental motion for any

5  reason, the court will rule on Olson Kundig's request for statutory damages under the

6  WPRA and enter final judgment consistent with this order.  The court will not revisit or

7  supplement any of the relief awarded in this order, including its award of attorneys' fees.

8  ### IV.    CONCLUSION

9       For the foregoing reasons, the court GRANTS in part Olson Kundig's motion for

10 default judgment (Dkt. # 52).  Specifically, the court orders as follows:

11      1.     The court GRANTS default judgment with respect to all of Olson Kundig's

12 claims;

13      2.     The court GRANTS in part Olson Kundig's request for a permanent

14 injunction and PERMANENTLY ENJOINS 12th Avenue Iron and its directors, officers,

15 agents, employees, successors, subsidiaries, assigns, affiliates, and all persons acting in

16 privity, concert, or participation with any of the above from continued infringement of

17 the D352 Patent, D197 Patent, D933 Patent, D422 Patent, the OLSON KUNDIG® mark

18 and the TOM KUNDIG COLLECTION mark;

19      3.     The court GRANTS Olson Kundig's request for $110,879.94 in unpaid

20 royalties under the Agreement;

21      4.     The court DEFERS ruling on Olson Kundig's entitlement to $1,500 in

22 statutory damages under the WPRA;

1    5.    The court GRANTS in part Olson Kundig's request for attorneys' fees and

2  AWARDS Olson Kundig $91,627.23 in attorneys' fees;

3    6.    The court AWARDS Olson Kundig post-judgment interest under 28 U.S.C.

4  § 1961.  The court will calculate the applicable post-judgment interest rate when it rules

5  on Olson Kundig's supplemental damages request;

6    7.    The court DENIES Olson Kundig's request for pre-judgment interest;

7    8.    The court GRANTS in part Olson Kundig's request for discovery to

8  determine Olson Kundig's total damages and orders limited damages discovery.  The

9  court ORDERS 12th Avenue Iron to, **by no later than June 5, 2023**, serve on counsel

10  for Olson Kundig, a report which provides documentation of all its sales of Tom Kundig

11  Collection products, sufficient to show the revenue and profit received for each sale.  To

12  the extent Olson Kundig intends to file a supplemental damages request in light of this

13  discovery, it must file a supplemental motion for damages **by no later than August 4,**

14  **2023**.  In its supplemental motion, Olson Kundig must take care to address the evidence

15  and law supporting any damages it requests and whether awarding the requested damages

16  would constitute double recovery.  If Olson Kundig fails to timely file such a

17  supplemental motion, the court will rule on Olson Kundig's request for statutory damages

18  under the WPRA and enter final judgment consistent with this order;

19    9.    Olson Kundig is entitled to recover the costs of this action.  After entry of

20  judgment, Olson Kundig may file a motion to tax costs/bill of costs pursuant to Local

21  Rule 54(d);

22

1    10.    The court will DEFER entry of final judgment until after the completion of

2   additional damages discovery; and

3    11.    The court DIRECTS the Clerk to mail this order to 12th Avenue Iron.

4   Dated this 5th day of May, 2023.

5

6   _____

7   JAMES L. ROBART
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 40